## THE ISAAC MAY.

*(District Court, N. D. New York.* September,1884.)

MARITIME LIEN — PRIORITY — MORTGAGE — ADVANCE TO PROCURE RELEASE OF VESSEL—SUBROGATION.

The steam-barge Isaac May, while lying at the port of Chicago, was libeled by P. for a breach of a charter-party the year previous, and seized by the marshal, whereupon her owner effected a settlement and release of the vessel by paying $1,500 to P., which was advanced to him by libelant under the express agreement that libelant should have a lien on the vessel,—the same security that P. had. *Held*, that libelant had a lien for the money so advanced superior to the lien of the holder of an overdue mortgage, who had permitted the owner to compromise the suit and remain in possession and management of the barge, no fraud or collusion between the owner and libelant being charged, and it not appearing that the owner had any valid defense to the suit.

Motion to Confirm Report of Commissioner in Favor of Libelant.

*George Wadsworth,* for libelant.

*Willis O. Chapin,* for respondent.

COXE, J. The steam-barge Isaac May, a Canadian vessel, was heretofore sold and the proceeds paid into the registry of the court. The libelant, Francis B. Leys, as holder of a maritime lien, seeks to recover of the fund in court $1,504 and interest thereon. The respondent, Robert Moat, as mortgagee, disputes this claim. In June, 1883, the Isaac May was lying at the port of Chicago. She was there libeled by Robert H. Pugh and seized by the marshal of the Northern district of Illinois, the libel alleging a breach of a charter-party the year previous. Her owner, Milton S. May, was with her at Chicago and effected a settlement with Pugh for $1,500. Being without funds he telegraphed to the libelant, who is a banker at London, Canada, to advance the money. This was done upon the express agreement that libelant should have a lien upon the vessel; the same security that Pugh had. The money was received and paid, and the

vessel, having taken a large cargo of grain, proceeded on her voyage.

The question to be determined is, has the libelant a lien superior to the respondent's mortgage? I think he has. That the Chicago libel stated a cause of action for which the vessel was chargeable there can be no doubt. In compromising this suit, in the manner indicated, May bound himself not only, but also the respondent, who, as holder of an overdue mortgage, permitted him to remain in possession and management of the barge. *The Canada,* 7 FED. REP. 730. Pugh alleged gross negligence on the part of the vessel's master as a reason for the failure to perform his contract. This charge was admitted by May. He interposed no defense. He had none which he thought available. The lien thus became absolute. The libelant made the advance, understanding that he was to be subrogated to Pugh's rights. He would not have parted with his money except upon this express agreement. May could never have defended against his claim. No one who was bound by May's action can defend. The respondent was so bound.

But it is insisted that the evidence discloses a defense to Pugh's libel which might have been interposed. That the evidence shows this is disputed. The respondent relies for confirmation of his position upon a statement made by May to libelant a month after the transaction in Chicago, to the effect that they could not perform their contract with Pugh on account of "distress in weather." In other words May told libelant that the delay was the fault of the weather and not his fault, but that the court would not accept such excuse, "and he was sure to be beaten." It is upon this statement that the respondent bases his argument that Pugh had no claim against the barge, and, therefore, libelant has none. The answer is twofold: *First,* May's statements to libelant do not prove the fact; and, *second,* if they did, the time to assert the defense was in answer to Pugh's libel. It is now too late. A mortgagee can hardly maintain the position that one who has advanced money actually paid for necessary supplies furnished a distressed vessel in a foreign port has no lien because the supplies were warranted, and were found to be of inferior quality. The answer that the master received the supplies without objection and paid the money for them, is conclusive. The best proof of the justice of Pugh's claim is its payment. The libelant is an innocent party who was assured of the existence of the lien and advanced his money in good faith to aid the barge when she was in dire necessity. There is no pretense that there was any fraud or collusion between him and May, or that he knew, or could have known, of any defense at the time of the advance. Justice demands that the agreement fairly made and fairly performed by the libelant should be upheld.

The conclusion reached by the commissioner is correct, and his report should be confirmed.