WARREN *et al. v.* FURSTENHEIM.

(*Circuit Court, W. D. Tennessee.* July 9, 1888.)

1. **ABATEMENT AND REVIVAL — DEATH OF PARTY — FEDERAL COURTS — FOLLOWING STATE LAW.**

    The survivability of actions in matters not within the exclusive control of congress being beyond the power of federal legislation, section 955 of the Revised Statutes adopts the local law in that regard for the government of the courts in reviving suits abated by the death of parties.

2. **SAME — ACTIONS FOR TORT.**

    The legislation of Tennessee has left the survivability of causes of action for tort, in all cases except those of injury to the person resulting in death, just where the common law and the ancient statutes of England placed it, unless suit be commenced before the death occurs, in which event the cause of action always survives, no matter what its nature may be, if it do not affect the character of the plaintiff, in which case alone, does a suit once brought ever abate by the death of a party to it, if it be a personal action as distinguished from a real action, as to which no opinion is expressed.

3. **SAME — DECEIT — FALSE REPRESENTATIONS AS TO CREDIT.**

    Whether an action of deceit for false representations as to the credit of another would survive in Tennessee if no suit be brought before the death occurs, *quære;* but whether it would so survive or not, it does survive by the peculiar law of that state saving the right of survival of the cause of action as well as the right of revival of the suit in all cases pending at the death, and this with the same effect in a federal court.

At Law. On motion to revive.
*Wright & Turley,* for the motion.
*Metcalf & Walker, contra.*

HAMMOND, J. Damages are claimed for alleged misrepresentations by the defendant concerning a firm of merchants to whom the plaintiffs gave credits that have been lost. There was a mistrial before a jury, and afterwards the defendant died. The motion for a revival of the suit is resisted upon the ground that the "cause of action" does not "survive by law" against the defendant's executor. Rev. St. § 955. If the decision of the question of the right of revival depended upon the determination of the law of Tennessee as to the survival of a cause of action like this as contradistinguished from the right of a plaintiff to revive a suit already commenced, it must be confessed that the subject would be involved in the greatest obscurity and doubt. The position of the defendant's executor is that, by the very terms of the act of congress above cited, it is required that the cause of action shall survive before a suit in the federal court can be revived by or against an executor or administrator; that, congress having prescribed this rule for the revival of suits in the courts of the United States, it is wholly immaterial that the state of Tennessee has prescribed a different rule concerning suits in the courts of that state, the legislation of congress being necessarily exclusive; and that as this cause of action could not, under the law of Tennessee, be originally brought against an executor, this suit must abate. This is a very strong position, which is supported by a line of reasoning conclusive of its soundness as well as by all the authorities construing the act

of congress, and it would be a successful defense to this motion were it not for the peculiarity of the law of Tennessee that "a cause of action" already imbedded in a suit commenced does survive to or against an executor, whether it would have so survived if suit had not been commenced, or not. In other words, a "cause of action" may abate, in Tennessee, so that no suit may be brought upon it by or against an executor or administrator, and yet it does not at all abate if a suit has been brought before that death occurs, which otherwise would have abated the cause of action. This is a reversal of the ordinary rule upon the subject, and of that which prevailed in this state prior to the act of 1836, c. 77, Car. & N. Tenn. St. p. 68; Thomp. & S. Code, §§ 2845, 2846; Mill. & V. Code, § 3559 *et seq.*

This is admitted by defendant's counsel as to suits in the state court, but they insist that the act of congress imposes a different rule on our federal courts, by referring the right of the revival of a suit in those courts to the test of the survivability of the cause of action, and not to the test of the right of revival of a suit which might have been brought in another tribunal, but was not. If we keep in view the distinction between the survival of a cause of action and the revival of a suit brought upon it, so much insisted upon by defendant, the fallacy of this contention will appear, unless we are again confused by the fact that, owing to the peculiarity of our local law, already mentioned, the one sometimes depends upon the other, and the two are yet in such cases to be kept entirely separate and distinct, in applying this act of congress. The right to revive this suit in no sense depends upon the right which would have existed in the plaintiffs to revive the self-same suit if it had been brought in a state court of competent jurisdiction; but it is because the requirement of the act of congress has been met, and the identical "cause of action" upon which this suit is founded "survives by law," that the right of revival has attached. It can make no difference that this survival of the cause of action depends upon the condition precedent that a suit shall have been brought upon it in the life-time of the alleged tort-feasor; for the legislature of the state may attach whatever condition it chooses, establish whatever exceptions it may wish, and in whole and in part create and regulate the right of property involved; and that is precisely what this is. And by this local law, whatever it may be, the federal courts are bound, just as they are in administering any other rights of property created by local legislation. Nor can it make any difference that other causes of action precisely like this, upon which no suits have been brought, do not survive by reason of that fact; for it is this cause of action,—the one which is embodied in this suit, and not any other cause of action,—which must survive to save the right of revival of the suit, under the act of congress; and this survives because of the existence of the very suit to be revived, and not because of any other fact whatever. The act of the state legislature does not prescribe as a condition that the suit, the bringing of which breathes the breath of survivability into the nostrils of "the cause of action" embodied in it, shall be brought in the state court, to have that quality. To read it so would

be to attach another condition than the statute mentions. It is certainly true that a suit brought in another state would not conform to the condition and create the quality of survivability, because the legislation of the state would not be potential in that direction; but, as to the federal domain, it has potentiality in creating rights of property to be there observed, and this by the federal constitution and acts of congress in that behalf, and to that extent, and in such behalf, the federal courts become *pro hac*, the same as the state courts. This is a familiar principle of wide extent, recognizable everywhere, and by its operation this cause of action survives as a right of property in the plaintiffs as fully as it would have done if they had brought this suit in a state court. It would be a monstrous miscarriage of justice if there should be any difference between the two so that this right of property would exist in one court, and not in the other; and, although it may be freely conceded that such a monstrosity is not impossible under our dual system of government, and we have some established differences that are quite as monstrous perhaps, yet congress has been careful not to cultivate such a state of the law, but to provide against it; and the courts will never, by construction of an act of congress, establish it if that can be avoided. Nothing but the positive language of a statute would receive that construction, I imagine.

Having reached this conclusion, it becomes unnecessary to decide whether a cause of action for deceit like this survives in Tennessee when no suit has been commenced in the life-time of the parties to the transaction about which the complaint is made, although it would not be improper, perhaps, to express an opinion upon it, since, if it does survive, the plaintiffs here would be entitled to a revival of this suit without regard to the point already determined, and the question is therefore technically involved in this motion. I shall not, however, burden this opinion with its consideration, but have assumed for the purposes of this motion that it does not survive.

In support of the ruling here made the first essential observation is to note with emphasis the distinction between the abatement of *a suit* by the death of one or both of the parties to it, and the abatement of a cause of action by force of the maxim, *actio personalis moritur cum persona.* Broom, Leg. Max. 904. The first is a matter of procedure, purely so; and congress has made its own rule, as it may, and by the practice conformity act likewise adopted the state practice where its own legislation does not control. At common law, every suit, whether founded on contract or tort, abated by the death of either party, and could proceed no further. It absolutely perished. One class of English statutes having the force of common law with us abrogated this rule, and allowed the executor or administrator to come in voluntarily or be brought in by *scire facias*, 17 Car. II. c. 8; 8 & 9 W. 3, c. 11; Fost. Sci. Fa. 174, 186–200. It was a condition of these statutes that the revival could take place only "if such action might be originally prosecuted, or maintained by or against the executors or administrators of the party dying," (Id. 187;) that is to say, provided the "cause of action" should be unaffected by the deadly force of the above-mentioned maxim. Now, where or when it

was so unaffected was and is to this day one of the most perplexing subjects with which the courts have had to deal; because another class of English statutes modified the maxim, and it was, under their influence, still more restricted by judicial decision or opinion, the decision and *dicta* of Lord MANSFIELD in *Hambly* v. *Trott*, 1 Cowp. 371, being, perhaps, the basis or starting point of most of the modern decisions upon the subject, as well as of most of the legislation in relation thereto. But one has only to read such judgments as *Twycross* v. *Grant*, 4 C. P. Div. 40, *Phillips* v. *Homfray*, 24 Ch. Div. 439, and *Finlay* v. *Chirney*, 20 Q. B. Div. 494, 37 Alb. Law J. 392, to see how unsettled the law is, and how obscure the distinctions upon which depend the survivability of causes of action remain even to this day in those courts, where the common law and the statutes of England are best understood. And, then, one has only to turn to the statutes, which are numerous, of any one or more of the American states, and read the series of judicial decisions upon the subject, to see how little success has attended its legislative regulation; the legislatures seemingly being helpless almost in their attempts to get away from the influence of that old maxim upon the judicial thought of this country, because, no doubt, in its main elemental promulgation it states a principle that accords with the universal sense of justice, or is thought to do so by most judges,—that the wrongs which are *personal* only should die with the wrong-doer, or with the physical sufferer from them. But when it comes to deciding whether any given wrong be only of that character, it seems quite useless to seek for any given standard of correct judgment that shall be satisfactory to everybody. 22 Amer. Law Reg. 353, 425; 2 Alb. Law J. 187; 33 Alb. Law J. 184, 204; 1 Chit. Pr. 137.

But this is a property right growing out of the absolute dominion of the legislature over the property or estates of dead men, and over their affairs in their relations to the living. *Peake* v. *Railroad Co.*, 26 Fed. Rep. 495. And while congress may and does undertake for its own courts to determine the matter of procedure concerning the abatement of suits,—whether they shall remain abated, and the parties left be sent to bring new suits wherever they have that right, or whether they may assert that same right of action which has been transmitted to them by a revival of the suit already brought,—it is not, perhaps, within the power of congress to say what causes of action shall or shall not survive to or against executors or administrators; or, to put it another way, it does not belong to congress to meddle with this old maxim of our law. And it has not undertaken to do so by the act. Rev. St. § 955. Again, congress has not by that act re-enacted the first class of English statutes above referred to concerning the abatement of suits. It has legislated upon the same subject, and adopted the same principle, that suits shall not be abated by the death of parties; but it has not attached the same conditions to the right of revival, and, if the above reasoning be correct, has not the power to attach the same conditions in the sense that it may prescribe what causes of action shall or shall not survive, while regulating the procedure upon the abatement of suits by the death of parties, as the Ten-

nessee legislature, for example, has done by the sections of the Code already cited. No doubt congress could say what suits should or should not remain abated in their courts in the same phraseology as the English or Tennessee statutes use, but the effect would not be the same, for this power to provide for the revival of suits and for the survivability of causes of action at one and the same time would not exist as it does with the English parliament or the Tennessee legislature. It cannot create rights of property, whether of the survivability of causes of action or what not, except as to patent rights, copyrights, and the like subjects within its exclusive jurisdiction. Because it has the power to regulate the abatement of suits it does not follow that it has the power to determine the survivability of a cause of action, with the exception stated. Hence, we find that this act of congress does not use the phraseology of the old English acts which were its prototypes, nor could it any more adopt the phraseology of our Tennessee statutes, so far as they depart from the purpose of making a mere regulation of preventing the abatement of a suit, and undertake to establish the right of property involved in the survivability of the cause of action, and precisely for the reason that the subject-matter is not within the federal jurisdiction. So it is, congress attaches to the right of revival no conditions affecting the survivability of causes of action, and undertakes to create no right of property, but adopts the local law of the state in that behalf, necessarily so, and refers us to that law, be it what it may, for the conditions involving the right of property in the survivability of the cause of action. It could do nothing else than that. Read in the light of this distinction then, the act seems plain enough when we incorporate, as we must, so much of the Tennessee statute as gives the right of property in the survivability of the cause of action. The peculiarity of the Tennessee legislation masks, so to speak, this distinction between the two classes of legislative acts involved in the consideration of this motion,—the one within the competency of congress and the other not within it, perhaps, but both essential to the establishment of the right of the plaintiffs—*First*, to pursue the defendant's executor; and, *secondly*, to pursue him by the revival of this suit. They get the first solely from the legislation of the state in the manner I have endeavored to explain, and the second solely from the act of congress, commencing with the thirty-first section of the original judiciary act of 1789, (chapter 20, 1 St. 90; Rev. St. § 955.) I think this distinction finds a pertinent illustration in the state of the law pertaining to real actions in respect to this matter of revivability. It was held in *Macker* v. *Thomas*, 7 Wheat. 530, that the original act of 1789 applied only to personal actions, and that real actions still abate as at common law in the federal courts; and the fact that now, under the state statutes, the cause of action would survive in such cases, as by our recent state statute of 1877, c. 111, concerning injuries to real estate, which was produced, perhaps, by decisions of the state supreme court on that subject, might not make them revivable in the federal courts, unless the original section of the act of 1789 has been enlarged by the Revised Statutes to include them.

The case of *Schreiber* v. *Sharpless*, 110 U. S. 76, 3 Sup. Ct. Rep. 423,

and 17 Fed. Rep. 589, (in the court below,) is conclusive that the survivability "of the cause of action" is a right of property, and not a matter of procedure, as is the revivability of "a suit" pending at the time of the death, and this important distinction was probably overlooked in *Jones* v. *Van Zandt*, 4 McLean, 599, and sometimes is not observed in the other cases on the general subject. The cases are numerous that hold, in applying the act of congress, that it refers us to the local law of the state as established by its legislation and decisions, and not to the common law for the determination of the right of the survivability of the cause of action, and they need not be cited here. Nearly every case so proceeds, avowedly or impliedly. The case of *Witters* v. *Foster*, 26 Fed. Rep. 737, is a recent example of the direct enunciation of that rule, enforced everywhere. The case of *Henshaw* v. *Miller*, 17 How. 212, holds distinctly that, under the Virginia statutes regulating the survivability of actions, the cause of action in a case like this did not survive, and consequently a suit already brought in the federal court was not revivable. But what has already been said shows that the case does not require us to hold that this suit cannot be revived, but, on the contrary, compels us to hold that it may be, because by the law of Tennessee, unlike that of Virginia, such a cause of action does survive, if suit be already brought upon it in the life-time of the alleged tort-feasor. Concerning the Tennessee statutes it may be remarked that, unlike most of the states, we have never had any legislation regulating the survivability of causes of action upon which suit has not been already brought when the death occurs; and the law seems to depend wholly upon the common law and such English statutes as may be in force; and from that which has been already said it may be seen that under that state of the law it is always difficult to determine whether any given cause of action founded in tort will or will not survive if suit has not been commenced before the death occurs. It was not until 1799, three years after the cession of the territory comprising the state of Tennessee, that North Carolina commenced to legislate upon that subject, and by that act of cession the former laws were continued in force. This establishes in this state the act of 4 Edw. III. c. 7, which is quoted in Broom, Leg. Max. 909, and is printed in full in Martin's Collection of English Statutes in force in North Carolina, at page 63, and is the foundation of the law of the subject so far as the maxim of the common law has been modified by it and the decisions under it.

The decisions in other states depend on the particular statutes which have been enacted in most of them, and care is required not to be misled by them, and it is doubtful how far our courts may follow the modern English decisions expounding the operation of this ancient act of parliament. The first North Carolina act of 1785 provided only against the abatement of appeals, and that of 1786 against the *abatement of suits* by the death of either the plaintiff or defendant, and these became a part of the Tennessee law by the act of cession of the territory, and are the origin of our later Tennessee statutes on that subject. Subsequently, in 1799, after the cession of Tennessee territory, North Car-

olina commenced to legislate upon the *survivability of actions*, but of course these acts are not in force here. But prior to that it had become the settled construction of the North Carolina acts that suits could not be revived unless the cause of action survived to or against executors or administrators, under the law upon that subject, which was precisely the rule under the English acts to prevent the abatement of suits. This was the law of North Carolina at the date of cession, became the law of the territory organized after the cession, and the law of Tennessee on the organization of that state in 1796, and so remained until our act of 1836 first established the existing rule that all suits commenced might be revived, without regard to whether the cause of action, without such suits, would have survived or not. It contained an exception, however, against the revival of "actions for wrongs affecting the person or character of the plaintiff," and this has been ever since our law until, in 1858, it was again modified by our Code, which confined the exception to "actions affecting the character of the plaintiff," only. Act 1785, c. 2, § 2, (1 Scott. Rev. 331;) act 1786, c. 14, § 1, (Id. 368;) act of cession, 1789, c. 3, § 1, subsec. 8, (Id. 408;) act 1715, c. 31, §§ 6, 7, establishing the common law and certain English statutes, (Id. 22;) act 1778, c. 5, § 2, (Id. 226;) *Estis* v. *Lenox*, Cam. & N. 72; *Anon.*, 1 Hayw. (N. C.) 576; *Blount* v. *Fish*, Id. 578; act 1836, c. 77, § 1, Car. & N. St. 68; Thomp. & S. Code, §§ 2845, 2846, (A. D. 1858;) Mill. & V. Code, §§ 3559, 3560; *Jones* v. *Littlefield*, 3 Yerg. 133; *Douglass* v. *Morford*, 7 Yerg. 78; *Griffith* v. *Beasly*, 10 Yerg. 433; *Havins* v. *Bickford*, 9 Humph. 673; *Governor* v. *McManus*, 11 Humph. 151; *Winters* v. *McGhee*, 3 Sneed, 127; *Kimbrough* v. *Mitchell*, 1 Head, 539.

Attention should now be fixed upon the peculiar structure of the Code of 1858 upon this matter. Section 2845 enacts: "Actions do not abate by the death, marriage, or other disability of either party, or by the transfer of any interest therein, if the cause of action survives or continues." Manifestly this is an accurate declaration of the law of Tennessee as it stood at that date under the legislation and decisions above cited, but it does not at all provide for the *survivability* of any cause of action, and would leave the matter in the state courts precisely on the same footing that it stands in the federal courts under the Revised Statutes, § 955,—the effect of the two sections being the same. That section, however, does not declare the whole law of the subject as it then existed. It enacts from the act of 1836 the declaration that actions, meaning *suits*, shall not abate by the death, (as they did not under former acts,) and from other acts the same declaration as to the effect of marriage, etc., *if they survive;* but it did not undertake to enact, as did the act of 1836 and only that act, that the commencement of a suit should, with certain exceptions, endow the cause of action embodied in the suit with the quality of survivability; and it leaves that matter for attention in the next section, 2846, as follows: "No civil actions commenced, whether founded on wrongs or contracts, except actions affecting the character of the plaintiff, shall abate by the death of either party, but may be revived." Taken together, the two sections harmonize only on the theory that the

second goes further than the first, and supplies the essential quality of survivability, which that section requires, to certain actions,—those upon which suit has been brought when the death occurs, namely. But it does not provide for survivability as to any causes of action whatever upon which suit has not been brought. Thomp. & S. Code, §§ 2845, 2846; Mill. & V. Code, §§ 3559, 3560; *Bream* v. *Brown,* 5 Cold. 168; *Chambers* v. *Porter,* Id. 273; *Cherry* v. *Hardin,* 4 Heisk. 199; *Baker* v. *Dansbee,* 7 Heisk. 229; *Fowlkes* v. *Railroad Co.,* 9 Heisk. 829; *Collins* v. *Railroad Co.,* Id. 841; *Bolin* v. *Stewart,* 7 Baxt. 298; *Trafford* v. *Express Co.,* 8 Lea, 96; *Akers* v. *Akers,* 16 Lea, 7.

Mention should be made of that separate, if not independent, class of statutes modeled on Lord Campbell's act, which some of the above cases involve, but which illustrate and support the correctness of this judgment, not only by their analogy, but by their entire harmony with the other statutes only on the theory of this judgment. Their very existence demonstrates that the proper effect has been here given to the legislation, and that this analysis of it is correct. But it must be remembered that commencing in 1831, chapter 17, those statutes provide for the survivability of the "right of action" for injury to the person where *death was caused by the injury,* and not to any other "rights of action whatever." As to those resulting in the death of the victim of the wrong, suit may be brought after that death; this being by these statutes established as an exception to that general rule above considered. Thomp. & S. Code, §§ 2291, 2294; Mill. & V. Code, §§ 3130–3135.

The result may be stated that our Code leaves the survivability of causes of action in all cases except of injury to the person resulting in death, where the common law and ancient statutes of England left it, unless suit be brought before a death which would otherwise abate the cause of action, and, in that event, it always survives, no matter what its nature may be, if it does not affect the *character* of the plaintiff, in which latter case alone does a suit already brought abate, in that class of suits known as personal actions as contradistinguished from those affecting real property, as to which last class of actions this opinion has taken no notice, and has no concern. Motion granted.

NOTE BY JUDGE HAMMOND. Refraining from the expression of any judicial opinion upon the survivability of this cause of action, independently of the suit which saved it, there may be no impropriety in saying that I have examined a great many of the decisions upon the general subject, and all that I could find upon this particular kind of action, as they will be disclosed by reading the authorities cited in the opinion, and examining the digests, and they seem to me to indicate that, aside from peculiar statutes to be found in several states, the survivability depends upon the circumstances of each case. Whether founded in contract or tort, or whatever the cause of action, which distinctions are only auxiliary guides in the consideration of the facts, if the property of the victim of the tort has been directly, and not remotely and incidentally only, injured by the wrong done, then there is a right of revival, otherwise not; some authorities, and perhaps all, require any such injury to be averred in the pleadings, especially if the damage be not apparent, as a direct result of the wrong. Therefore, some actions of deceit for falsely represent-

ing the credit of another might survive, and others might not, according to the nature of the facts. Thus, in this case, while the declaration does not aver it specifically, I remember it was argued at the trial as a fair inference from the proof that the defendant, who was a factor and commission merchant, endeavored to "unload"—to use the expressive language of counsel —a very insolvent customer upon the plaintiffs, thereby transferring in effect the plaintiff's money to the payment of debts due from that customer to himself. If this were averred in the declaration, the right of survivability might be a much closer question than it would be without such special averment. Just as in the cases cited in the opinion concerning the action for a breach of marriage promise, there seems to be indicated a principle that causes of action for a special injury to the plaintiff's property, or for a special loss of benefits fairly called property, might survive. It is a curious feature of the subject that, let the legislation be what it may, even to listing or enumerating the kinds of action that may survive, the courts apply the old maxim, if possible, and will dig into the dead man's grave to reinter the wrongs he has suffered or inflicted on others, in spite of the legislative resurrectionists.