## RANDALL et al. v. PROCEEDS OF THE SCRANTON.

### Petition of AMERICAN SURETY CO. OF NEW YORK.

District Court, W. D. New York. September 15, 1927.

1. **Subrogation ⚖️7(1)—Surety on bond for release of vessel from libel is not subrogated to lien on vessel, as against valid prior mortgage or maritime lien.**

When a libeled vessel is released from seizure on bond, the bond stands in lieu of the vessel as to the claim in the libel, and no lien is created against the vessel in favor of the surety, though it pays the decree and takes assignment of the claim, as against a prior mortgage or maritime lien.

2. **Courts ⚖️343—Statute authorizes substitution of representative appointed in any state for deceased party (28 USCA § 778).**

28 USCA § 778 (Comp. St. § 1592), authorizes substitution for a deceased party of his executor or administrator, appointed in any state or territory.

3. **Maritime liens ⚖️69—Ship mortgage, though not preferred lien, held to entitle holder to surplus from sale under libel after payment of maritime liens.**

A mortgage for the purchase price of a vessel, though not so recorded as to become a preferred lien, is valid, and entitles the holder to

any surplus arising from sale of the vessel under libel after payment of maritime liens.

In Admiralty. Petitions of Henry Randall and others, administrators, and of the American Surety Company, against the proceeds of the steamer Scranton in the registry of the court. On exceptions to petitions. Exceptions to petition of administrators overruled, and exceptions to petition of Surety Company sustained.

Stanley & Gidley, of Buffalo, N. Y., for American Surety Co. of New York.

Brown, Ely & Richards, of Buffalo, N. Y., for administrators.

HAZEL, District Judge. The administrators of William H. Sharp, deceased, owners of a nonmaritime purchase-money mortgage on the steamer Scranton, which was libeled by a creditor and sold by order of this court, have filed an amended petition, claiming the right to participate in the distribution of funds realized on the sale, now in the registry of the court. Exceptions to the petition were filed by the American Surety Company of New York, on the grounds that the mortgage lien is invalid, and that insufficient facts are stated to warrant relief. The American Surety Company also filed its petition against the funds in the registry of the court, claiming a priority of payment over the mortgage debt, and the administrators of the estate of the mortgagee have, in turn, filed exceptions and answer thereto.

The exceptions filed on both sides were argued at the same time, and consideration will now be given them. The record shows that the original owner of the steamer Scranton, William H. Sharp, sold her to one Neff for $35,000, both being citizens of the United States, and that $5,000 was paid in cash; the balance of $30,000 being secured by the purchase-money mortgage in controversy. The steamer, on delivery to the purchaser, was operated by him, and in 1926 expenses were incurred for repairs to her boiler and for coal supplied during September and October. Tashenberg Bros., who repaired the boiler, libeled the steamer to recover $4,847.48, the value of the work, and Neff, as owner, on March 6, 1926, to release her from arrest, filed a bond or stipulation in the sum of $6,000, wherein the American Surety Company of New York was surety. Final decree, fixing the amount owing to Tashenberg Bros. at $5,107.59, with interest, was entered on May 14, 1927, and the American Surety Company, two months later, paid the amount, receiving an assignment of the Tashenberg Bros. indebtedness and their rights under the decree.

Prior thereto, on April 1, 1927, Kemp Bros. Coal Company filed a libel against the Scranton to recover the amount due for coal furnished, and later an interlocutory decree of sale in that case was entered. The steamer was sold, under the decree, to William H. Sharp, Jr., and Henry Randall, as administrators of William H. Sharp, deceased, the former owner and mortgagee, for the sum of $22,000, which is the fund now in the registry of the court. Other libels for claims had also been filed against the steamship, and were consolidated with the libel filed by Kemp Bros. Coal Company. The American Surety Company also received an assignment from Neff, the owner of the Scranton, of any interest he might have in the proceeds of sale at the time of her seizure and sale.

The first questions are whether the American Surety Company, by reason of its payment of the Tashenberg claim, and decree and assignments mentioned, obtained the right to intervene in the proceeding instituted by Kemp Bros. Coal Company, wherein the steamer was sold for the purpose of enforcing its lien, if any, against the proceeds of sale, or whether, because it bonded the vessel, thereby relieving her from arrest, and its subsequent payment of the Tashenberg claim, an equitable lien against the fund eventuated. To both contentions the answer is in the negative.

[1] It is well settled in admiralty jurisprudence that, when a libeled vessel is released from seizure by the marshal on a valid bond or stipulation, the bond, undertaking, or stipulation stands in lieu of the vessel as to the claim in the libel, and no lien is created against the vessel in favor of the surety by subrogation or assignment against a valid prior mortgage or maritime liens. The Evangel (D. C.) 94 F. 680; The Vigilant (D. C.) 175 F. 226.

The bond or undertaking of Neff, as principal and owner of the Scranton, was, it may be assumed, in the accepted form, and the surety, by its terms, became answerable for any decree that might be rendered in the particular action. In pursuance thereof, the vessel was released from the seizure to her owner for operation. The effect of the surety bond or stipulation was to discharge the maritime lien of Tashenberg Bros., for whose benefit it was given, without subrogation, as above stated, to the lien against the vessel or its proceeds, in the event of a sale under other liens. 1 Benedict on Admiralty (5th Ed.) §

364; 1 Corpus Juris, p. 1308, § 177. And see The Rupert City (D. C.) 213 F. 263. The assignments to the surety company from the owner of the vessel and from Tashenberg Bros., no doubt conferred upon the surety company the rights of the owner after payment of liens, or any remaining rights of Tashenberg Bros., together with the right to recover in personam against the principal surety; but they went no further. No broader right passed or gave precedence to an existing valid , mortgage or other maritime claims against the vessel in being or arising subsequently. The Madgie (D. C.) 31 F. 926; The Evangel, supra.

The Isaac May (D. C.) 21 F. 687, upon which reliance is placed in opposition to this rule, decided by Judge Coxe, when United States District Judge for the Northern District of New York, does not strictly apply to the present situation. There libelant became the holder of an existing maritime lien owing to advances of money by him to the owner of the barge, the advances being made under an express agreement that he should have a lien upon the vessel with the same security that the prior libelant had; while here Tashenberg Bros.' lien, under the decree, was discharged or paid by the surety bond given to effectuate that particular object, or with the result that, instead of their maritime lien, on entry of the decree, they simply retained the right to look to the liability of the bondsmen for payment of their judgment. The decisions uniformly hold a lien creditor only is entitled to share in the distribution of the proceeds of sale of a vessel in admiralty (The Ada [C. C. A.] 250 F. 194-197), while others, aside from the owner, have no claim to the surplus; their rights being limited "strictly to the rights of the libelant against claimant personally," but not against the fund (39 Corpus Juris, p. 1253, § 151).

Proctor for the surety company challenges the validity of the prior mortgage on the vessel on the ground that it did not constitute a maritime debt; that it was overdue when the surety company lien was created; that the owner was allowed to operate the vessel; that the mortgagee failed to comply with section 838, title 46, of the U. S. Code (46 USCA § 838; Comp. St. § 8146r[4]), requiring a written declaration of citizenship of the mortgagee; and furthermore, that the administra-

tors herein have no standing in this court, since their appointment was made in Michigan without taking out letters of administration in this state.

[2] As to the last-mentioned objection, assuming it to be germane, it suffices for me to say that section 778, tit. 28, of the U. S. Code (28 USCA § 778; Comp. St. § 1592) confers the right, on executors and administrators of any party who dies before final judgment or decree, regardless of their appointment in another state or territory, to sue and be sued at law or equity, or to intervene in admiralty. See, also, Henry on Admiralty Jurisdiction and Procedure, § 126; The Boston (D. C.) 3 F. 807.

[3] Nor is the validity of the mortgage open to question under sections 808–838, tit. 46, of the U. S. Code (46 USCA §§ 808–838; Comp. St. § 8146e et seq.), since these provisions, I think, when read together, in the main relate to purchases of vessels by the United States Shipping Board. It may fairly be presumed that all the requirements of the recording act, and any conditions precedent therein specified as to citizenship of the mortgagee, were fully obeyed. Indeed, the certificate of enrollment of the Scranton, filed with the mortgage in question, shows that the owner, who afterwards became mortgagee upon her sale to Neff, was a citizen of the United States, his oath of citizenship being taken before the collector of customs at Port Huron, Mich.

It is also suggested that there was delay on the part of the administrators in presenting their claim, and therefore they are barred; but any attempt to foreclose the mortgage could not have in any way affected the maritime liens or prejudiced any one. The mortgage, it is true, is not a preferential lien; but it is nevertheless a legal lien, and entitled to the surplus remaining after payment of the maritime liens.

Accordingly, the exceptions of the surety company to the petition of the administrators are overruled. The American Surety Company of New York has neither a maritime lien by subrogation, nor an equitable lien entitling it to share in the proceeds of sale ahead of the various maritime claims filed, or ahead of the mortgage lien in question, and hence the exceptions interposed by the administrators to its petition are sustained.