# PLIMPTON v. MATTAKEUNK CABIN COLONY, Inc.

## SPELLACY et al. v. FARLEY.

### SAME v. FARLEY et al.

No. 1947.

District Court, D. Connecticut.

Feb. 17, 1934.

Lampke & Stein, of New York City (Samuel D. Stein, of New York City, of counsel), for receivers.

Allin, Tucker & Allen, of New York City (Lewis M. Isaacs and George L. Allin, both of New York City, of counsel), for executors.

THOMAS, District Judge.

This matter is now before the court on the motion of the executors to quash the writ of scire facias issued pursuant to Revised Statutes, § 955, as amended (28 USCA § 778).

Receivers in equity were appointed by this court in February, 1928, upon the filing

of a creditor's bill and consent of the defendant Cabin Colony. The receivership was made permanent. The Colony's principal asset was real estate situated in Connecticut. On April 9, 1930, Robert E. Farley, the executors' testator, the original respondent in the proceeding to which the present motion is addressed, signed a contract to buy said real estate from the receivers subject to this court's approval. The price was about $160,000, to be fixed exactly by survey and computation of acreage. Under the terms of the contract the buyer paid $10,000 on account, and agreed to pay the balance on closing of title. After hearings on notice, this court, by order dated April 29, 1930, approved and confirmed said contract. An appeal from the order of sale by a group of objecting lessees was on motion dismissed as frivolous by the Circuit Court of Appeals.

Thereafter, to avoid a possible question of title, a public auction sale, pursuant to statute, 28 USCA §§ 847, 849, was held by order of this court, and the said Farley bid in the property on the same terms specified in his contract and the April 29, 1930. order which had confirmed it. After hearing on notice, this court, by order of February 13, 1931, confirmed the public sale to Farley.

On November 25, 1931, Farley notified the receivers that he would not accept title to the property and complete his bargain on the ground that title was unmarketable. After protracted but futile negotiation between Farley and the receivers, the latter, on voluminous petitions and affidavits, obtained from this court on June 27, 1933, a rule nisi directing Farley to show cause why he should not specifically perform his contract, and pay damages accrued to the estate in receivership by reason of his alleged anticipatory breach; or, in the alternative, why the property should not be ordered resold at his risk, he to respond to any loss resulting from resale and to pay accrued damage. The rule further directed him to show cause why, if he proved recusant, he should not be punished for contempt and why pendente lite he should not be enjoined from transferring any of his assets.

On August 29, 1933, Farley appeared generally with respect to all portions of the said rule which required him to show cause why he should not specifically perform his contract and/or pay money damages, but (on the ground that he had been served without the district of Connecticut, he having been for some time confined by illness to his home in New York) he appeared specially with respect to that portion of the rule which required him to show cause why he should not respond to the additional incidental relief prayed for and be amenable to contempt proceedings, if recusant. In opposition to the rule he served voluminous answering affidavits in support of his contention that title was unmarketable and he prayed that the rule be discharged and his $10,000 deposit be returned with interest. Thereafter, the receivers served reply affidavits, but on September 28, 1933, shortly before the matter was to have been argued, Farley died. Letters testamentary issued out of the Surrogate's Court, Westchester county, N. Y., to his executors, on whom was duly served the writ of scire facias; and they thereupon appeared specially and made this motion to quash the writ.

Before considering the various grounds which counsel in their argument and exhaustive briefs have advanced in support of and attack on the writ, I shall quote the statute (28 USCA § 778) under which it issued:

"Death of parties; substitution of executor or administrator. When either of the parties, whether plaintiff or petitioner or defendant, in any suit in any court of the United States, dies before final judgment, the executor or administrator of such deceased party may, in case the cause of action survives by law, prosecute or defend any such suit to final judgment. The defendant shall answer accordingly, and the court shall hear and determine the cause and render judgment for or against the executor or administrator, as the case may require. And if such executor or administrator, having been duly served with a scire facias from the office of the clerk of the court where the suit is depending twenty days beforehand, neglects or refuses to become party to the suit, the court may render judgment against the estate of the deceased party in the same manner as if the executor or administrator had voluntarily made himself a party. The executor or administrator who becomes a party as aforesaid shall, upon motion to the court, be entitled to a continuance of the suit until the next term of said court.

"The provisions of this section shall apply to suits in equity and in admiralty as well as to suits at law, and the jurisdiction of all courts of the United States shall extend to and over executors and administrators of any party, who dies before final judgment or decree, appointed under the laws of any State or Territory of the United States, and such courts shall have jurisdiction within two

years from the date of the death of the party to the suit to issue its scire facias to executors and administrators appointed·in any State or Territory of the United States which may be served in any judicial district by the marshal thereof. No executor or administrator shall be made a party unless such service is made before final settlement and distribution of the estate of said deceased party to the suit.

"This section shall apply to suits in which any party has deceased prior to November 23, 1921, as well as to suits in which any party may have died thereafter or may die hereafter. (R. S. § 955; Nov. 23, 1921, c. 142, §§ 1, 2, 42 Stat. 323, 324; Dec. 22, 1921, c. 18, 42 Stat. 352.)"

It will at once be observed that the statute is limited to a pending suit and one of a nature that survives. The first paragraph of the section has been the law since the first Congress, whose object was to provide against the abatement of actions which would otherwise abate at common law. In re Connaway, as Receiver of the Moscow National Bank, 178 U. S. 421, 20 S. Ct. 951, 44 L. Ed. 1134. In equity, the cause would not abate if it was of a nature that survived, but was merely suspended until the representative of the deceased party was substituted. F. A. Mfg. Co., Inc., v. Hayden & Clemons, Inc. (C. C. A.) 273 F. 374; Sullivan v. Asso. Billposters (C. C. A.) 6 F.(2d) 1000, 42 A. L. R. 503. The second paragraph, enacted in 1921 (42 Stat. 323), applied the section to suits in equity and in admiralty as well as to suits at law. Prior thereto, the early procedure in equity was by bill of revivor or one of that nature; later, substitution was effected by motion under the Equity Rules, the latest being rule 45 of the rules of 1912 (28 USCA § 723). Brown v. Fletcher et al. (C. C.) 140 F. 639; Ex parte Slater, Public Administrator, etc., 246 U. S. 128, 38 S. Ct. 265, 62 L. Ed. 621. But since the 1921 amendment, substitution and revivor are effected by writ of scire facias in all proper cases, whether at law, in equity, or in admiralty.

The statute says, "In case the cause of action survives by law," but it is silent as to what causes survive and what do not. Even prior to the 1921 amendment, the rule was stated by Chief Justice Waite in Schreiber et al. v. Sharpless, 110 U. S. 76, at page 80, 3 S. Ct. 423, 424, 28 L. Ed. 65, as follows:

"Whether an action survives depends on the substance of the cause of action, not on the forms of proceeding to enforce it."

And whether a particular action is of a kind that survives for or against the personal representative of a deceased person is a question not of procedure but of right. Martin's Administrator v. Baltimore & Ohio Railroad Co., 151 U. S. 673, 14 S. Ct. 533, 38 L. Ed. 311; Warren et al. v. Furstenheim (C. C.) 35 F. 691, 1 L. R. A. 40.

Since Congress has not determined what causes of action survive, the established rule, undisputed, is that except in actions brought under a federal statute, the law of the state where the action was commenced, in this instance Connecticut, governs. B. & O. Railroad v. Joy, 173 U. S. 226, 19 S. Ct. 387, 43 L. Ed. 677. It is also conceded that the relevant portion of the pertinent Connecticut law is the following, which I quote from section 6030, General Statutes of Connecticut, Revision of 1930:

"Survival of actions and causes of action. No cause or right of action shall be lost or destroyed by the death of any person, but it shall survive in favor of or against the executor or administrator of such deceased person. No civil action or proceeding shall abate by reason of the death of any party thereto, but it may be continued by or against the executor or administrator of such decedent. In case of the death of any party plaintiff, his executor or administrator may enter within six months thereafter and prosecute the suit in the same manner as his testator or intestate might have done if he had lived; and, in case of the death of any party defendant, the plaintiff may have a writ of scire facias against such decedent's executor or administrator to show cause why judgment should not be rendered against him, which shall be served at least twelve days before the day upon which it is returnable, and upon its return the action may proceed. The provisions of this section shall not apply to any cause or right of action or to any civil action or proceeding the purpose or object of which is defeated or rendered useless by the death of any party thereto; nor to any civil action or proceeding whose prosecution or defense shall depend upon the continued existence of the persons who are plaintiffs or defendants; nor to any civil action upon a penal statute."

In Pickett v. Ruickoldt, 91 Conn. 680, at page 683, 101 A. 82, 83, Judge Beach, speaking for the Supreme Court of Errors, said, in interpreting this statute:

"Under this statute the survival of actions is the rule and not the exception, and the presumption is that every cause or right

of action survives until the contrary is made to appear by way of exception to the rule."

In Reed v. Copeland et al., Executors, 50 Conn. 472, 47 Am. Rep. 663, specific performance was granted the plaintiff against the defendant's executor. On page 488 of 50 Conn., Judge Loomis said:

"The fact that one of the parties has deceased is no objection to the remedy sought, for it is a settled rule that equitable remedies exist to the same extent against executors and administrators as they did against the decedent."

See, also, Merwin v. Merwin, 75 Conn. 8, 52 A. 614; Dunn et al. v. Grant et al., 81 Conn. 127, 70 A. 703; Raymond, Conservator, v. Bailey, Administrator, 98 Conn. 201, 118 A. 915; Orr v. Ahern, Administrator, 107 Conn. 174, 139 A. 691.

In Mitchell et al. v. Hotchkiss, 48 Conn. 9, 40 Am. Rep. 146, the court, in construing the same section, stated:

"The executor represents the person of the testator, and in legal consequence may be said to continue his existence with respect to all his debts, covenants and contract obligations, which became due during his life or after his death, except such as depend on his personal skill, in which is always implied the condition that the contractor is not prevented from completing his contract by the act of God.

"But all private as well as public wrongs and crimes are buried with the offender. The executor does not represent or stand in the place of the testator as to these, or as to any acts of malfeasance or misfeasance to the person or property of another, unless some valuable fruits of such acts have been carried into the estate; and this in strictness constitutes no exception to the rule, for the executor in such case cannot be made liable for the tort of his testator, but only for the implied promise which the law raises and allows the injured party to put in the place of the wrong."

The executors refer to Hedenburg v. Hedenburg, 46 Conn. 30, 33 Am. Rep. 10, in support of their contention, but in that case there was no pending suit, and original jurisdiction was denied, not only because the decedent never had resided and never had any assets in Connecticut, but because the court was apparently swayed by the plaintiff's laches.

It would seem clear then that by the law of Connecticut, which here governs the survival of causes, actions sounding in contract survive, and also actions in tort where the decedent retained the fruits of his wrongdoing.

Before considering, on principle, the executors' objections to their being substituted, I should say at once that on authority alone, their motion must be denied. Precisely in point is Luster et al. v. Martin et al., 58 F.(2d) 537, decided by the Circuit Court of Appeals for the Seventh Circuit. That was a stockholders' suit against the president of a corporation for breach of contract and for appointment of a receiver of an alleged resulting trust fund. The suit was commenced in the Wisconsin state court and removed to the federal court there. The defendant had moved to and died a resident of Missouri and his executors were appointed by the probate court of Missouri. The plaintiffs revived the action by service of scire facias on the executors, who then appeared specially and moved to quash the writ. The motion was denied. The action was ordered continued against the executors who were directed to deliver to the receiver a sum equal to the trust fund and interest amounting to $266,345. Among the objections urged by the executors and considered but rejected on appeal to the Circuit Court of Appeals, there was the claim that the court had no jurisdiction of the trust funds since they did not have a situs in Wisconsin, and that as the property constituted part of the decedent's estate and was in the possession of the probate court of Missouri (a court of competent and exclusive jurisdiction), the District Court had no power to appoint a receiver or render a decree affecting that property. Though I have not seen the record, I am informed by counsel that the appellants, in their petition for writ of certiorari (287 U. S. 637, 53 S. Ct. 86, 77 L. Ed. 552), which was denied, raised also the question of the constitutionality of this revivor statute. As will hereinafter appear, practically the same basic objections are raised by the executors on the instant motion, and the objections are largely subject to the same vices.

The executors here, as in the Luster Case, urged Burrowes v. Goodman (C. C. A.) 50 F.(2d) 92, 77 A. L. R. 249, as authority to quash the writ. That case, if applicable, would be binding upon me as the decision of this circuit. But, as pointed out by Judge Evans in the Luster Case, on page 540 of 58 F.(2d):

"The case of Burrowes v. Goodman (C. C. A.) 50 F.(2d) 92 [77 A. L. R. 249], much relied upon by appellants, is clearly distin-

guishable on the ground that no suit was pending in that case when the party died. It was therefore not a case of revival of action under section 778 [28 USCA]."

Examination of the Burrowes Case makes clear its inapplicability to the case at bar. That was an original action commenced by plaintiff, as receiver of a North Carolina National Bank, against the defendant as executrix appointed in Pennsylvania. The reason the court considered the status of foreign executors and certain New York cases which are also cited by the executors on the present motion, was because the executrix had entered a general appearance when the suit was commenced and on appeal there was presented the question whether she might submit to the jurisdiction in New York, where the pertinent New York statute had been repealed. The court was therefore called upon to interpret the laws of New York governing an original suit against a foreign executrix and had accordingly applied the statutory and case law of New York. There in no way was involved a consideration, nor is there any reference in that case to 28 USCA § 778, which governs substitution in a pending suit where, as in the instant case, the court had jurisdiction.

The executors further rely on Moore, Treasurer, v. Mitchell et al., Executors, 281 U. S. 18, 50 S. Ct. 175, 74 L. Ed. 673, affirming the decision of the Circuit Court of Appeals for the Second Circuit, 30 F.(2d) 600, 65 A. L. R. 1354. But that case is likewise not applicable here because, again, there was no pending suit but an effort to obtain original jurisdiction in the suit brought in a New York Federal District Court [28 F.(2d) 997] by an Indiana county treasurer against New York executors to collect Indiana taxes on intangible property. Not only had the assessment not been made, but even the Indiana statute, under which the treasurer was authorized to sue, had not been passed until after the testator's death; nor was it alleged that any of the testator's property had ever been physically within the state of Indiana or that the testator had died there. There was the added distinction, as pointed out by Judge Manton who wrote the opinion for the Circuit Court of Appeals. On page 602 of 30 F.(2d), he said:

"Taxes are imposts, not debts, collected for the support of the government. * * * No contractual or quasi contractual obligation to pay arises out of the assessment. The enforcement of revenue laws rests, not on consent, but on force and authority. * * * The revenue laws of one state have no force in another. The taxing power of a state is, by the federal Constitution (Amendment 14), limited to persons and property within its jurisdiction."

But aside from the penal and peculiar aspects of revenue laws, it is sufficient to distinguish the case on the ground that there was no pending suit. The case makes no reference to the federal revivor statute.

The rule in the Luster Case would, therefore, seem controlling. Nor has its authority been reduced, as suggested by the executors, because the same court in a later decision, Williams v. Williams et al. (C. C. A.) 61 F.(2d) 257, cited the Burrowes Case and not its previous Luster decision. Suffice it to say that in the Williams Case there was again involved no pending suit, nor the revival statute, but a different one dealing with substituted service. In addition to the Luster decision, the following, and apparently all the other cases decided since the 1921 Amendment, sustain the scope and object of the statute: Heath et al. v. Santa Lucia Co. S. A. et al. (D. C. S. D. N. Y., 1924) 3 F.(2d) 326; Randall et al. v. Proceeds of The Scranton (D. C. W. D. N. Y., 1927) 23 F.(2d) 843; In re Statler (The Miramar) 31 F.(2d) 767 (D. C. S. D. N. Y., 1929), affirmed in (C. C. A.) 36 F.(2d) 1021, certiorari denied in 281 U. S. 752, 50 S. Ct. 355, 74 L. Ed. 1163; Little v. Keaton (C. C. A., Tenth Circuit, 1930) 38 F.(2d) 457, certiorari denied in 282 U. S. 847, 51 S. Ct. 26, 75 L. Ed. 751; Brown-Crummer Inv. Co. v. City of Florala (D. C. Ala., 1931) 55 F.(2d) 238; Gaskins v. Bonfils (D. C. Colo., 1933) 4 F. Supp. 547. I conclude that on the authority of the decided cases, the executors' motion must be denied and they should be substituted in the pending proceeding.

I shall now examine the question on principle. The executors urge that the statute does not purport to confer authority to issue the writ in this matter. Despite its clear and general language, they suggest that within its intent and meaning, the pending proceeding was not a "suit," nor was Farley a "party," nor was he a "defendant."

Nevertheless, they cite cases which support the doctrine of the leading case of Camden v. Mayhew, 129 U. S. 73, 9 S. Ct. 246, 32 L. Ed. 608. On page 85 of 129 U. S., 9 S. Ct. 246, 249, Mr. Justice Harlan said:

"Where a purchaser refuses, without cause, to make his bid good, he may be compelled to do so by rule or attachment issuing out of the court under whose decree the sale is had. * * * If, as is clear, the purchas-

er can be required, by rule or attachment, to pay into court the entire sum bid by him and thus complete his purchase, it is difficult to see why a bidder, sought to be made liable for a deficiency resulting from a resale caused by his refusal to make his bid good may not be proceeded against in the same suit by rule, or in any other mode devised by the court that will enable him to meet the issue as to his liability."

The rule nisi which issued herein against Farley was therefore the proper procedure and constituted, in my view, a proceeding embraced by the generic term "suit" as used in the statute.

In Weston v. Charleston, 2 Pet. 449, 464, 7 L. Ed. 481, the Supreme Court of the United States, in answering the inquiry, "Is a writ of prohibition a suit," held that the word "suit" in the twenty-fifth section of the Judiciary Act of 1789, applies to any proceeding in a court of justice in which the plaintiff pursues in such court the remedy which the law affords him, and therefore held that a writ of prohibition is a "suit." On page 464 of 2 Pet., Chief Justice Marshall said:

"The term is certainly a very comprehensive one, and is understood to apply to any proceeding in a court of justice, by which an individual pursues that remedy in a court of justice which the law affords him. The modes of proceeding may be various, but if a right is litigated between parties in a court of justice, the proceeding by which the decision of the court is sought, is a suit."

See, also, McPike v. McPike, 10 Ill. App. 333; Bouvier, Third Revision, vol. 2, page 3181. The word "party" is also a generic term. A bidder at a judicial sale is one who offers to pay a specified price for an article at a public auction, and if the bid is accepted by the court, as here, he thereby becomes a "party" to the "suit," or at least, a "quasi party." In State of Tenn. v. Quintard, 80 F. 829 (C. C. A. Sixth Circuit), it was held that a purchaser at a master's sale becomes a quasi party to the suit, and is affected with notice of every step subsequently taken in the case relating to the purchase and the title acquired thereby.

In Blossom v. Milwaukee, etc., Railroad Co., 1 Wall. 655, 17 L. Ed. 673, which was cited in Camden v. Mayhew, supra, Mr. Justice Miller, on page 656 of 1 Wall., said:

"A purchaser or bidder at a master's sale in chancery subjects himself quoad hoc to the jurisdiction of the court, and can be compelled to perform his agreement specifically.

It would seem that he must acquire a corresponding right to appear and claim, at the hands of the court, such relief as the rules of equity proceedings entitle him to."

Farley was a "party" within the meaning of the statute and no less so because in the pending proceeding he was called "respondent" instead of "defendant." None of these words is to be construed literally, for the statute expressly applies to suits in admiralty, where the parties are called "libellant," "claimant," or "respondent," though these designations are not used in the statute.

The executors next urge that, assuming ex hypothesi that Farley became a party to a suit, the cause of action did not survive because, on his death, this court became powerless to punish him for contempt. This is to confuse remedy with cause of action. The gravamen of the cause of action is breach of contract and, as already mentioned, the cause is of a nature that survives; it does not abate because one of several remedies, alternative or cumulative, cannot be applied. Specific performance and/or payment by the executors, should the court so decree, are not precluded by their testator's death. In Sullivan v. Associated Billposters, supra, the Second Circuit Court of Appeals adapted the remedy to the changed conditions when in an action under the Sherman Anti-Trust Act it allowed against an executor the plaintiff's actual damage, but not the treble punitive damages which would have been assessed against the decedent. Aside from general principles, the contract itself expressly provided it should survive the death of either party.

The executors next contend that in this court they are foreign executors and cannot be compelled to submit to its jurisdiction against their will, and if the statute be so construed, it violates the due process of law clause of the Fifth Amendment of the Federal Constitution. The numerous cases cited in support of this contention I find inapplicable for one or more of the following reasons, namely, that no suit was pending; that state and not federal power was involved; and that there was involved the statute before its amendment in 1921. Thus, Moore v. Mitchell, supra, and Burrowes v. Goodman, supra, and the series of New York cases therein considered. Likewise, in that landmark, Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565, there was no pending suit and the court, in construing an Oregon statute, decided that the Oregon state court did not obtain original jurisdiction of a nonresident by

mere publication. Similarly, in Thorburn v. Gates (D. C.) 225 F. 613, there was no pending suit and a New York statute was under consideration. The distinction between original jurisdiction and retaining it in a pending cause (to which the revivor statute is limited), has long been recognized. In 1810, Chief Justice Marshall said in McKnight v. Craig's Administrator, 6 Cranch, 183, at page 187, 3 L. Ed. 193:

" * * * The defendant upon the scire facias can only plead what the intestate could have pleaded; and that it is not to be considered as a proceeding against the representative of the deceased, but a continuance of the original action."

Most recently, in Ormsby v. Chase, 290 U. S. 387, 54 S. Ct. 211, 78 L. Ed. 378, decided by the United States Supreme Court, December 11, 1933, Mr. Justice Butler pointed out that the same distinction is recognized and said:

"As there had been no suit, no question of revivor is presented."

Citing Martin v. Baltimore & Ohio Railroad, 151 U. S. 673, 691, 14 S. Ct. 533, 58 L. Ed. 311, et seq., Baltimore & Ohio Railroad Co. v. Joy, 173 U. S. 226, 19 S. Ct. 387, 43 L. Ed. 677.

That there is a distinction between federal and state powers has also been repeatedly recognized. Among the cases relied upon by the executors, e. g., Pennoyer v. Neff, supra, Mr. Justice Field pointed out, page 732 of 95 U. S., that:

"Whilst they (the courts of the United States) are not foreign tribunals, in their relations to the State courts, they are tribunals of a different sovereignty, exercising a distinct and independent jurisdiction. * * *"

And in Moore v. Mitchell, supra, the Supreme Court of the United States held that federal courts exercise a jurisdiction that is independent of and under a sovereignty that is different from that of a state. And in Thorburn v. Gates, supra, Judge Learned Hand, at page 617 of 225 F., says:

"The Constitution, in giving to federal courts jurisdiction over controversies between diverse citizens by sovereign power, gives an authority pro tanto over domestic administration which does not exist between independent states. It might, indeed, have gone further and made effective its own decrees, assuming the total administration of decedents' estates, except for the fact that this might involve purely domestic matters, and perhaps because it had no machinery."

In Vaughan v. Northup, Administrator,

15 Pet. 1, at page 6, 10 L. Ed. 639, Judge Story points out that:

"The United States, in their sovereign capacity, have no particular place of domicile, but possess, in contemplation of law, an ubiquity throughout the Union."

The creation of the federal courts, their jurisdictional limits, and the power of Congress in respect thereof, are considered in United States v. Union Pacific R. R. Co., 98 U. S. 569, 25 L. Ed. 143, where the Supreme Court sustained the constitutionality of an act very similar in principle to that of the revivor act as amended. In that case there was reviewed the Act of March 3, 1873 (17 Stat. 509), which authorized the federal court where the cause was pending, to issue process against parties and their representatives where deceased, and to issue its writs to any districts. The same objections were there urged against the power of a federal court by its writ sent without the district to subject foreign executors to its jurisdiction against their will, but the Supreme Court unanimously sustained that power.

■ Whether or not prior to 1921, federal courts, in the absence of congressional mandate, refrained from exercising jurisdiction over foreign executors in a pending suit, the 1921 amendment obviously intended to grant the exercise of such power.

In Luster v. Martin, supra, Judge Evans, at page 539 of 58 F.(2d), said:

"The 1921 amendment to section 778, title 28, extended the revival of actions against administrators and executors. The effect of this amendment is disclosed in the two cases of Lawrence v. Southern Pacific Co. (C. C.) 177 F. 547 (decided in the second circuit before the amendment), and Randall v. Proceeds of The Scranton (D. C.) 23 F.(2d) 843, 845. It was to extend the rights of action which otherwise survived by law to cases against executors and administrators of a deceased party, who were appointed under the laws of any state that the amendment was enacted."

In the Randall Case, Judge Hazel, at page 845 of 23 F.(2d), said:

"It suffices for me to say that section 778, tit. 28, of the U. S. Code (28 USCA § 778) confers the right, on executors and administrators of any party who dies before final judgment or decree, regardless of their appointment in another state or territory, to sue and be sued at law or equity, or to intervene in admiralty."

As to what constitutes due process? In

Blackmer v. U. S., 284 U. S. 421, on page 440, 52 S. Ct. 252, 256, 76 L. Ed. 375, Chief Justice Hughes, said:

"The requirement of due process in such a case is satisfied by suitable notice and adequate opportunity to appear and to be heard."

In that case, federal process was served in France on a citizen of the United States by the United States Consul. The statute (28 USCA §§ 711–718) was declared constitutional. It would seem not open to doubt that the writ of scire facias served by the United States marshal under the revivor statute we are considering and which provides that the executors may not be defaulted within twenty days after service, constitutes due process.

It is further argued that the executors are assignees by operation of law, and, as they have not assumed the obligations of the contract, specific performance does not lie against them. I do not consider that the status of the executors in the present case is that of the ordinary assignee who has acquired the rights but has not assumed the obligations of a contract; rather are the executors here to be deemed the continuance in law of their testator who admittedly subjected himself to the jurisdiction of this court. The statute requires them not to appear and defend an original suit, but merely to take the place of their testator in one already pending against him. This is recognized by various cases already cited. Among them is authority for specific performance against executors. See Reed v. Copeland, supra. But even were the law otherwise, it does not follow that the suit must abate, for, in lieu of specific performance, money damages may be decreed or such other appropriate relief granted as a court of equity may under the circumstances deem just. Sullivan v. Associated Billposters, supra.

Finally, the executors argue that to impose upon them the burden of specific performance without reference to the financial condition of the testator's estate would be an improper interference by this court with the ordinary process of the Surrogate's Court and might constitute a preference to one group of creditors over others. I find these objections likewise untenable. The mere retention by this court of its jurisdiction in the pending suit may give it that "authority pro tanto over domestic administration," referred to in Thorburn v. Gates, supra; but, as pointed out in that case, such a result flows from the federal jurisdiction granted by the Constitution. If there be a conflict pro tanto between federal and state power, it would seem clear Congress intended that at least in a pending suit, the federal jurisdiction should be retained and not surrendered. Assuming that this court should decide adversely to the executors and decree specific performance or grant such other relief as might result in a priority in favor of one group of creditors, is not a valid ground for denying the court's jurisdiction. The executors took the estate saddled with its obligations, fixed or in course of being determined by the proper tribunal, and the right of each creditor was subject to the rights of other creditors. The law generally recognizes certain priorities, as for example, taxes; and in the administration of decedents' estates, the probate law generally allows certain preferences, as for example, funeral expenses. In any event the plea for possible inequity is premature. Non constat the estate cannot meet all obligations in full, but if an adverse determination in the pending proceeding would result in an unjust priority, this court of equity may be presumed, on being apprised of the facts, to decree the form of relief consonant with equitable principles.

I conclude that both on the authority of decided cases, and likewise on principle, the motion must be denied; and it is so ordered.