**COMMERCIAL SOLVENTS CORPORATION v. JASSPON.**

Civ. 48-283.

United States District Court
S. D. New York.

Aug. 8, 1950.

Wickes, Riddell, Bloomer, Jacobi & McGuire, Harold F. McGuire and William G. Fennell, all of New York City, for plaintiff.

Poletti, Diamond, Roosevelt, Freidin & Mackay, Jack Lewis Kraus II and Irving Sadur, all of New York City, for defendant.

McGOHEY, District Judge.

This is a motion under Rule 25(a) (1)[1] of the Federal Rules of Civil Procedure, 28 U.S.C.A., for an order substituting as parties defendant Gertrude Jasspon and Security-First National Bank of Los Angeles, Executrix and Executor, respectively (hereinafter referred to as Executors), of the Last Will and Testament of Moses Bernard Jasspon, the deceased defendant.

The action was commenced December 2, 1948. Jasspon died in California on November 25, 1949. The Executors appear here "specially and only for the purpose of opposing plaintiff's motion."

Letters Testamentary were issued to the Executors in the Superior Court of the State of California in and for the County of Los Angeles on January 11, 1950. It appears that no inventory has yet been filed and that there has been no final distribution and settlement of the estate. There is nothing in the papers submitted on this motion to indicate that there are any assets within this District, and there are no Surrogate's Court proceedings pending in New York State.

The notice of motion was served on the Executor and the Executrix in Los Angeles, California, by a Deputy United States Marshal on February 16, 1950, and February 27, 1950, respectively. They are both California residents and the Security-

1. "Rule 25. Substitution of Parties
"(a) Death.
"(1) If a party dies and the claim is not thereby extinguished, the court within 2 years after the death may order substitution of the proper parties. If substitution is not so made, the action shall be dismissed as to the deceased party. The motion for substitution may be made by the successors or representatives of the deceased party or by any party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of a summons, and may be served in any judicial district."

First National Bank is not qualified to do business in New York. The attorneys for defendant were served in New York on March 1, 1950.

Jurisdiction rests on diversity of citizenship, the amended complaint alleging that plaintiff is a Maryland corporation duly qualified to do business in New York and that defendant was a New York citizen. The action is for an accounting and damages for Jasspon's alleged breaches of his fiduciary duty as plaintiff's vice president in charge of beverage spirits sales. He is asserted to have realized undisclosed profits from transactions he caused plaintiff to enter into; to have appropriated corporate opportunities for his own profit; and to have accepted bribes and other compensation from plaintiff's customers.

·Defendant went to California shortly after service of the complaint, and on January 24, 1949, moved for a change of venue to the Southern .District of California claiming that he was a resident of that district then and at the time the action was commenced. A Special Master was appointed to take testimony and report on that issue, but the proceedings have not been completed and the issue of defendant's residence remains undetermined. For the purposes of this motion I have assumed that the venue is proper.

Since the commencement of the action there have been several motions relating to attempted examination of Jasspon, whose health was apparently too poor to permit the examination to be completed. A suggestion by Judge Leibell that a stipulation of facts be entered into failed of fruition when Jasspon died. Issue was not then joined, Jasspon's time to answer having been adjourned prior to his death to December 15, 1949.

Rule 25 of the Federal Rules of Civil Procedure, which applies only if the death of the defendant does not extinguish the claim, does not undertake to designate the claims which survive. Under New York Law, by which that question must be determined,[2] the instant claim survives since it is one for injury to property.[3]

It would seem therefore that, as the plaintiff has complied with the plain requirements of Rule 25(a) (1), the motion should be granted. The Executors argue, however, that this case is not covered by the Rule—that the Rule does not mean what it says when it authorizes service "in any judicial district"—and that, assuming it does apply, its use here to permit substitution would be in violation of the doctrine of Erie R. Co. v. Tompkins, s_pra. Neither contention is sound.

According to the Note of the Advisory Committee on Rules, Rule 25(a) (1) is based upon old Equity Rule 45 [4] and

---

2. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; 4 Moore's Federal Practice 515, 2d Ed.; 2 Barron & Holtzoff, Federal Practice & Procedure 240.

3. Decedent Estate Law, McK.Consol.Laws, c. 13, § 118; "Actions against executors or administrators for injury to person or property.
   "No cause of action for injury to person or property shall be lost because of the death of the person liable for the injury. For any injury an action may be brought or continued against the executor or administrator of the deceased person * * *."
   Seventeenth Ward Bank v. Webster, 67 App.Div. 228, 73 N.Y.S. 648.

4. "Rule 45. Death of Party—Revivor
   "In the event of the death of either party the court may, in a proper case, upon motion, order the suit to be revived by the substitution of the proper parties. If the successors or representatives of the deceased party fail to make such application within a reasonable time, then any other party may, on motion, apply for such relief, and the court, upon any such motion may make the necessary orders for notice to the parties to be substituted and for the filing of such pleadings or amendments as may be necessary."
   But see 4 Moore's Federal Practice 505, 2d Ed.: "While the committee note of 1937 stated that paragraph (1) of subdivision (a) of Rule 25 was based upon Equity Rule 45 and former 28 U.S.C. Sec. 778 (1946), * * * the real basis was not Equity Rule 45 but the statute, Sec. 778."

old 28 U.S.C.A. § 778[5]. The 1921 amendment, adding to Sec. 778 the last two paragraphs quoted in the margin, made it quite clear that Congress intended the section to provide for the substitution of personal representatives appointed in a state other than the one in which the federal court was sitting by service upon them in any state or territory of the United States.[6]

The Executors, while citing no authority in support of their narrow interpretation of Sec. 778, attempt to nullify the effect of the Luster and Plimpton cases. In Luster v. Martin an action was begun in the Wisconsin court against one Hermann to recover funds he was alleged to have obtained as a result of his breach of a reorganization agreement. Hermann was personally served in Wisconsin and had the action removed to the federal court. Upon his death as a resident of Missouri shortly thereafter, plaintiffs, by service of a scire facias pursuant to Sec. 778, substituted his executors who were appointed in Missouri and were residents of that state. The executors, as here, appeared specially and moved to quash the writ. The motion was denied as was their motion to dismiss. On appeal the Circuit Court held that: "section 778 authorized the revival of the suit against Hermann's executors no matter in what state they were appointed." 58 F.2d at page 540.

The Executors here say, however, that the Luster case is distinguishable because the complaint in that case alleged that large sums belonging to Hermann were on deposit in Wisconsin banks and that the Circuit Court said, 58 F.2d at page 539: "The numerous reasons which appellants assign for dismissal of the complaint will be considered on the assumption that the facts stated in the complaint are true." The theory being that in the Luster case there was a res subject to the court's jurisdiction—a fact not present in the instant case.

5. "§ 778. Death of parties; substitution of executor or administrator.
"When either of the parties, whether plaintiff or petitioner or defendant, in any suit in any court of the United States, dies before final judgment, the executor or administrator of such deceased party may, in case the cause of action survives by law, prosecute or defend any such suit to final judgment. The defendant shall answer accordingly, and the court shall hear and determine the cause and render judgment for or against the executor or administrator, as the case may require. And if such executor or administrator, having been duly served with a scire facias from the office of the clerk of the court where the suit is depending twenty days beforehand, neglects or refuses to become party to the suit, the court may render judgment against the estate of the deceased party in the same manner as if the executor or administrator had voluntarily made himself a party. The executor or administrator who becomes a party as aforesaid shall, upon motion to the court, be entitled to a continuance of the suit until the next term of said court.
"The provisions of this section shall apply to suits in equity and in admiralty as well as to suits at law, and the jurisdiction of all courts of the United States shall extend to and over executors and administrators of any party, who dies before final judgment or decree, appointed under the laws of any State or Territory of the United States, and such courts shall have jurisdiction within two years from the date of the death of the party to the suit to issue its scire facias to executors and administrators appointed in any State or Territory of the United States which may be served in any judicial district by the marshal thereof. No executor or administrator shall be made a party unless such service is made before final settlement and distribution of the estate of said deceased party to the suit.
"This section shall apply to suits in which any party has deceased prior to November 23, 1921, as well as to suits in which any party may have died thereafter or may die hereafter. (R.S. § 955; Nov. 23, 1921, c. 142, §§ 1, 2, 42 Stat. 323, 324; Dec. 22, 1921, c. 18, 42 Stat. 352.)"

6. The amendatory act was entitled "An Act To amend section 955 of the Revised Statutes by extending the jurisdiction of courts in cases of revivor." 42 Stat. 323. See Luster v. Martin, 7 Cir., 58 F.2d 537, 539–540, certiorari denied 287 U.S. 637, 53 S.Ct. 86, 77 L.Ed. 552; Plimpton v. Mattakeunk Cabin Colony, Inc., D.C., D.Conn., 6 F.Supp. 72, 78.

It seems extremely doubtful to me that the court in deciding the case attributed any weight to this factor; certainly, the discussion of Sec. 778 quoted above does not advert to it. Indeed there is strong ground to believe that the Court did not give it any weight because, continuing the quotation in the preceding paragraph, the Court said, 58 F.2d at page 539: "We have examined the supporting and opposing affidavits and find in the statements of Mr. Catlin and Mr. Skamser, two disinterested parties, persuasive support of all of the allegations of the complaint, save the statement therein appearing that large sums of money made up of said trust funds were on deposit in banks in Eau Claire, Wis., and Chicago, Ill."

Accordingly, I am unable to accept the asserted distinction. The Connecticut District Court in Plimpton v. Mattakeunk Cabin Colony, supra—a case indistinguishable from this one—regarded the Luster case as controlling and held that Sec. 778 authorized revival against executors appointed in another state even though there were no assets in Connecticut.

Nor can there be any constitutional problem raised by Sec. 778, as so interpreted and applied. Manifestly the judicial power of the United States extends throughout the 48 states. Article III, Sec. 1 of the Constitution provides: "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." Article III, Sec. 2 provides: "The judicial Power shall extend * * *—to Controversies * * * —between Citizens of different States * * *."

■ "The discretion, therefore, of Congress as to the number, the character, *the territorial limits* of the courts among which it shall distribute this judicial power, is unrestricted except as to the Supreme Court." (emphasis supplied.)[7] "Congress could provide for service of process anywhere in the United States."[8]

■ So, also, there is no violation of the "due process" clause of the Fifth Amendment since the notice provided for was "reasonably calculated to give * * * actual notice of the proceedings and an opportunity to be heard."[9]

But, say the Executors, even if formerly they could have been substituted under Sec. 778, such substitution is no longer possible. The argument runs as follows: During the period from September 16, 1938 (the effective date of the Federal Rules of Civil Procedure), to September 1, 1948 (the effective date of new Title 28 U.S.C. A.), Sec. 778 and Rule 25 existed side by side and together regulated the substitution of parties. Rule 25(a) (1) provides that the notice of motion be served on persons not parties in the manner provided in Rule 4 for the service of a summons, and that it "may be served in any judicial district." Rule 4(f) provides: "All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held and, when a statute of the United States so provides, beyond the territorial limits of that state." From this, the Executors argue that Sec. 778 was the "statute of the United States" referred to in Rule 4(f) as providing for out-of-state service and which justified the authorization in Rule 25(a) (1) for service "in any judicial district." They then say that such justification vanished upon the enactment of new Title 28 which repealed Sec. 778. Consequently, they conclude, there is now no warrant for reading Rule 25 so as to permit the revival here attempted.

The heart of this ingenious argument is its reliance upon Rule 4(f) to make the extraterritorial service provision in Rule 25(a) (1) dependent upon the existence of Sec. 778. Rule 4(f), however, has no application here at all. The reference in Rule

7. United States v. Union Pacific Railroad Co., 98 U.S. 569, 602, 25 L.Ed. 143.

8. Mississippi Publishing Corp. v. Murphree, 326 U.S. 438, 442, 66 S.Ct. 242, 245, 90 L.Ed. 185.

9. Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278, 132 A.L.R. 1357.

25(a) (1) is to "the *manner* provided in Rule 4" (emphasis supplied), which is found in subdivisions "(c) By Whom Served", "(d) Summons: Personal Service" and "(e) Same: Other Service." Subdivision (f) "Territorial Limits of Effective Service" clearly does not describe *"manner of service."* (Emphasis supplied.) Thus this argument that the repeal of Sec. 778 changed the meaning of Rule 25(a) (1) falls.

The Revision Act of 1948 repealed Sec. 778 because it was "Superseded by Rules 25 and 81 of the Federal Rules of Civil Procedure."[10] Rule 25(a) (1) does no more than restate the substance of Sec. 778.[11] It is, therefore, not in violation of 28 U.S.C.A. § 2072[12] or Rule 82,[13] and clearly authorizes substitution and revival against these Executors.[14]

■ This holding is not contrary to the doctrine of Erie R. Co. v. Tompkins, supra. Diversity jurisdiction was granted to the federal courts in order to circumvent the apprehended danger that an out-of-state litigant might be subjected to local bias in the courts of the state in which his adversary resided. The doctrine of the Erie case, on the other hand, condemns the discrimination against local residents which resulted from the application of different rules of decision merely because an action upon a state-created right was brought in a federal court.[15]

■ The Executors' position is that since they could not be substituted by service of a notice of motion in California if this action had been pending in the New York court, they will, if the motion is granted, be subjected in this court to the type of discrimination that Erie v. Tompkins intended to prevent. That argument, however, fails to recognize "The distinction between original jurisdiction and retaining it in a pending cause."[16] Revival constitutes a continuance of the original action against Jasspon, not the bringing of a new one against his Executors.[17] Rule

10. H.Rep.No. 308 to accompany H.R. 3214 (80th Cong., 1st Sess.1947) p. A239.
   Rule 81 provides: "(b) Scire Facias and Mandamus. The writs of scire facias and mandamus are abolished. Relief heretofore available by mandamus or scire facias may be obtained by appropriate action or by appropriate motion under the practice prescribed in these rules."

11. 4 Moore's Federal Practice 506, 2d. Ed.

12. "§ 2072. Rules of civil procedure for district courts.
   "* * * *.
   "Such rules shall not abridge, enlarge or modify any substantive right * * *."

13. "Rule 82. Jurisdiction and Venue Unaffected
   "These rules shall not be construed to extend or limit the jurisdiction of the United States district courts or the venue of actions therein."

14. See 4 Moore's Federal Practice 518, 2d Ed.: "The motion may, however, be served pursuant to subdivision (a) (1) in any judicial district. This practice is a continuance of the substance of a comparable provision in 28 U.S.C. Sec. 778 (1946).

"The problem of jurisdiction of the person may be more acute as to foreign administrators, executors, or guardians. Before the enactment of former Sec. 778, it was held that a foreign administrator, etc., could be substituted only if the law of the state where he was appointed permitted him to be sued beyond its borders. But it has been held that the above-mentioned statute permitted the substitution regardless of the law of the state of appointment. [Citing Luster v. Martin and Plimpton v. Mattakeunk Cabin Colony]. This construction of former Sec. 778 could be properly carried over to Rule 25, since the rule was in no way inconsistent with the statute in this respect and therefore did not supersede that construction and, although former Sec. 778 was repealed by the Judicial Code of 1948, the construction should continue under Rule 25 despite the repeal of Sec. 778."

15. Guaranty Trust Co. of New York v. York, 326 U.S. 99, 111–112, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231.

16. Plimpton v. Mattakeunk Cabin Colony, supra, 6 F.Supp. at page 78.

17. See McKnight v. Craig, 6 Cranch 183, 186, 3 L.Ed. 193.

25(a) (1) is procedural.[18] It merely provides for "the manner and the means by which a right to recover, as recognized by the State, is enforced * * *"[19] by a court having venue, as well as power to decide the issues in the action, which is jurisdiction of the subject matter.[20]

New York has created a substantive right which the plaintiff says the defendant Jasspon violated. Jasspon could validly ask for no more than that plaintiff's claim be decided in this court under the same rules of decision New York would apply if the case were heard in its courts. There is nothing in the Erie case which gives the Executors a right to demand more than their testator could claim. New York has created no right in them or Jasspon which the application of Rule 25(a) (1) will impair.

Clearly recovery might be had if the Executors were before the New York court. On this motion it is assumed that the decedent was available to be brought before the state court and was properly before this court. New York has not limited the plaintiff's right of action to decedent alone, but extends that right against the latter's estate so that his Executors could be substituted if they were available for service within the state. This requirement of availability for proper service is not a state-imposed limitation on or curtailment of the right of action, like a statute of limitations.[21] In other words, New York in so far as it may or can has created a right in the plaintiff against Jasspon while he was alive and against his estate after his death. The accident of foreign Executors, which brings into play the constitutionally recognized limitation on state process, certainly cannot be translated into a state-imposed limitation on the right. It merely erects an obstacle to the "manner and mode" by which the state-created right can be enforced in the state court. That obstacle might indeed be insurmountable if there were not available to the plaintiff a court free from the limitations which erect the obstacle. This court is free from them, and its rules clearly establish a procedure by which the state-created right may be enforced under the state's rules of decision. Executors contend in the name of Erie for a result which would involve this court's reshaping of a state-created right—a result which is contrary to the whole spirit of the Erie doctrine. Erie v. Tompkins does not require us to withhold the aid of Federal procedures to the vindication and enforcement of state-created rights in accordance with its rules of decision. On the contrary, it seems to me, it commands us to make that aid available.

The motion is therefore granted.

Settle order.

18. 2 Barron & Holtzoff, Federal Practice and Procedure 239.

19. Guaranty Trust Co. v. York, supra, 326 U.S. at 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079, 160 A.L.R. 1231.

20. Mississippi Publishing Corp. v. Murphree, 326 U.S. 438, 445, 66 S.Ct. 242, 90 L.Ed. 185.

21. See Guaranty Trust Co. v. York, supra, 326 U.S. at 110, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231.