## BARNES COAL CORPORATION v. RETAIL COAL MERCHANTS ASS'N et al.

### No. 4930.

Circuit Court of Appeals, Fourth Circuit.

May 29, 1942.

646

George E. Allen, of Richmond, Va. (George E. Allen, Jr., and Allen & Allen, all of Richmond, Va., on the brief), for appellant.

Ralph T. Catterall, of Richmond, Va., Christopher B. Garnett and George W. Dalzell, both of Washington, D. C., and Guy B. Hazelgrove, of Richmond, Va. (Williams, Mullen & Hazelgrove, Hunton, Williams, Anderson, Gay & Moore, Wirt P. Marks, Jr., Irvin G. Craig, and M. J. Fulton, all of Richmond, Va., Charles E. Mahan and Stanley C. Higgins, Jr., both of Fayetteville, W. Va., Barbour, Garnett, Pickett, Keith & Glassie, of Fairfax, Va., Landon C. Bell, of Columbus, Ohio, and Fred O. Blue and Charles M. Love, both of Charleston, W. Va., on the brief), for appellees.

Before PARKER, SOPER and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an action instituted by a retail coal dealer to recover triple damages pursuant to 15 U.S.C.A. § 15. The complaint alleges a conspiracy among the defendants violative of the Sherman Anti-Trust Act of 1890, as amended, Title 15, secs. 1 to 7, 15 note, U.S.C.A., the Clayton Act of 1914, Title 15, secs. 12 to 27, U.S.C.A. and the Robinson-Patman Act of 1936, amending sec. 2 of the Clayton Act, 15 U.S.C.A. § 13. It claims that plaintiff has been damaged in the sum of $15,000 as a result of the conspiracy and the things done thereunder, in that the volume of its business and the amount of its profits have been curtailed thereby, in that it has experienced difficulty and been put to expense in obtaining coal, which it is engaged in selling, and in that it has had to pay a higher price for the coal that it has been able to obtain. The action was dismissed by the court below on the ground that it was not brought within one year after the accrual of the cause of action and was barred by the Virginia statute of limitations. It is conceded that, since there is no federal statute of limitations applicable to actions for damages instituted under the federal anti-trust acts, the state statute of limitations governs. Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241.

Sec. 5818 of the Virginia Code provides: "Every personal action, for which no limitation is otherwise prescribed, shall be brought within five years next after the right to bring the same shall have accrued, if it be for a matter of such nature that in case a party die it can be brought by or against his representative; and, if it be for a matter not of such nature, shall be brought within one year next after the right to bring the same shall have accrued."

It is conceded that the action was brought within five years of the accrual of the cause of action alleged; and the question upon

the appeal is whether or not the action is of such a nature that it survives the death of a person by or against whom it might have been brought. We think that this question must be answered upon a consideration of the federal statute in the light of the principles of the common law, without reference to the state rule upon the subject, and that, when so considered, the right of action given by the statute is clearly one that survives and is consequently subject to the five year and not the one year provision of the statute of limitations. If, however, we look only to the law of Virginia, we think that the cause of action is one which survives and that it is the five year limitation which is applicable. Three distinct questions are considered in reaching this conclusion: (1) Whether the survivability of the cause of action is to be determined by the federal courts in the exercise of an independent judgment, or whether they are bound by the decisions of the state in which the action is brought with respect to this matter; (2) whether under the rule as established by the federal courts, the cause of action survives; and (3) whether such a cause of action survives under the rule of the Virginia decisions. We shall consider these questions in the order named.

██ On the first question, it is well settled that, with respect to a cause of action created by act of Congress, the question of survival is not one of procedure but one which depends "on the substance of the cause of action". Schreiber v. Sharpless, 110 U.S. 76, 80, 3 S.Ct. 423, 424, 28 L. Ed. 65; Martin's Adm'r v. Baltimore & O. R. Co., 151 U.S. 673, 692, 14 S.Ct. 533, 38 L.Ed. 311. And, unless the cause of action as so created by act of Congress survives, it does not survive by reason of provisions of state law Michigan Central R. Co. v. Vreeland, 227 U.S. 59, 67, 33 S.Ct. 192, 57 L.Ed. 417; Walsh v. New York, N. H. & Hartford R. Co., C.C., 173 F. 494; Van Choate v. General Electric Co., D.C., 245 F. 120; 1 C.J.S., Abatement and Revival, § 135, p. 183; 25 C.J. 822. It follows that whether the action for damages created by the Sherman Act survives is to be determined by an interpretation of the statute in the light of the common law and is not governed by state survival statutes or state decisions relating to the subject. Glenn Coal Co. v. Dickinson Fuel Co., 4 Cir., 72 F.2d 885, 890; Sullivan v. Associated Billposters, etc., 2 Cir., 6 F.2d 1000, 42 A.L.R. 503; United Copper Securities Co. v. Amalgamated Copper Co., 2 Cir., 232 F. 574; Haskell v. Perkins, D.C., 28 F.2d 222; Caillouet v. American Sugar Refining Co., D.C., 250 F. 639; Bonvillain v. American Sugar Refining Co., D.C., 250 F. 641; Imperial Film Exchange v. General Film Co., D.C., 244 F. 985; 1 Am.Jur. sec. 129; note 42 A.L.R. 521. The decision of the Supreme Court in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, has no bearing on the matter; for the question is not one as to a state common law rule but as to the interpretation of a federal statute and the consequences which flow from it. Awotin v. Atlas Exchange Nat. Bank, 295 U.S. 209, 55 S.Ct. 674, 79 L. Ed. 1393; Deitrick v. Greaney, 309 U.S. 190, 200, 60 S.Ct. 480, 84 L.Ed. 694; D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp., 62 S.Ct. 676, 679, 86 L.Ed.—.

██ ██ On the second question, we entertain no doubt as to the survivability of the cause of action when the statute creating it is interpreted in the light of the common law rule relating to survival. While there might be some doubt as to this were we to look only to the ancient decisions, we think that the rule is to be determined, not merely by a consideration of the state of the common law at the time of the enactment of the statute de bonis asportatis in the reign of Edward III, or even by a consideration of the common law rule at the time of the American Revolution, but in the light of its subsequent development and the decisions interpreting it. It must be remembered, in this connection, that the common law is not a static but a dynamic and growing thing. Its rules arise from the application of reason to the changing conditions of society. It inheres in the life of society, not in the decisions interpreting that life; and, while decisions are looked to as evidence of the rules, they are not to be construed as limitations upon the growth of the law but as landmarks evidencing its development. As was said in Hurtado v. California, 110 U.S. 516, 530, 4 S.Ct. 292, 28 L.Ed. 232, "Flexibility and capacity for growth and adaptation is the peculiar boast and excellence of the common law"; and, in the recent case of Funk v. United States, 290 U.S. 371, 54 S.Ct. 212, 216, 78 L.Ed. 369, 93 A.L.R. 1136, wherein the ancient rule that the wife was not a competent witness for the husband in a criminal trial was repudiated on the ground that it was no longer in harmony with the spirit of the common law as it had developed, the Court quoted this statement from

Hurtado v. California as to the flexibility and capacity for growth of the common law, and went on to say: "To concede this capacity for growth and change in the common law by drawing 'its inspiration from every fountain of justice,' and at the same time to say that the courts of this country are forever bound to perpetuate such of its rules as, by every reasonable test, are found to be neither wise nor just, because we have once adopted them as suited to our situation and institutions at a particular time, is to deny to the common law in the place of its adoption a 'flexibility and capacity for growth and adaptation' which was 'the peculiar boast and excellence' of the system in the place of its origin."

■ The modern rule as to survivability, we think, is that actions for torts in the nature of personal wrongs, such as slander, libel, malicious prosecution, etc., die with the person, whereas, if the tort is one affecting property rights, the action survives. 1 Am.Jur. pp. 71 and 72; 1 C.J.S., Abatement and Revival, § 132, p. 179; Kinney v. Town of West Union, 79 W.Va. 463, 91 S.E. 260; Lee's Adm'r v. Hill, 87 Va. 497, 12 S.E. 1052, 24 Am.St.Rep. 666 and note; Winston v. Gordon, 115 Va. 899, 80 S.E. 756; Sullivan v. Associated Billposters and Distributors, 2 Cir., 6 F. 2d 1000, 42 A.L.R. 503. Underlying the distinction between actions that die with the person and those that survive is the basic thought that the reason for redressing purely personal wrongs ceases to exist either when the person injured cannot be benefited by a recovery or the person inflicting the injury cannot be punished, whereas, since the property or estate of the injured person passes to his personal representatives, a cause of action for injury done to these can achieve its purpose as well after the death of the owner as before. This rule that the cause of action for injury to property or estate survives is in accord with the rule in equity, where proceedings relate primarily to the protection of property rights. 1 Am.Jur. 68; Clarke v. Mathewson, 12 Pet. 164, 169, 171, 9 L.Ed. 1041. The late Judge Rogers in Sullivan v. Associated Billposters and Distributors supra [6 F.2d 1004], after an exhaustive review of applicable authorities, thus states the modern rule as to the survival in law actions: "It was a rule of the common law that most causes of action based on contract survived, while most of those founded on tort abated. But the rule was subject to various exceptions. The real test, so far as tort actions were concerned, seems to have been whether the injury on which the cause of action was based affected property rights, or affected the person alone. In the former case the cause of action survived, while in the latter it abated."

■ The cause of action created by the Sherman Act is based, not on injuries affecting the person, but on injuries affecting property rights. It is given to "any 'person' who shall be injured in his business or property" by unlawful practices forbidden by the act; and this means that the business or property of plaintiff must have been, in some way, injured by the unlawful practices. Monarch Tobacco Works v. American Tobacco Co., C.C., 165 F. 774. This, of course, is an injury of a very different sort from an injury to the person; and the great weight of authority is to the effect that the cause of action survives. Hicks v. Bekins Moving & Storage Co., 9 Cir., 87 F.2d 583; Moore v. Backus, 7 Cir., 78 F.2d 571, 101 A. L.R. 379; Fazakerly v. E. Kahn's Sons Co., 5 Cir., 75 F.2d 110, 114; Sullivan v. Associated Billposters and Distributors, 2 Cir., 6 F.2d 1000, 42 A.L.R. 503; United Copper Securities Co. v. Amalgamated Copper Co., 2 Cir., 232 F. 574; Imperial Film Exchange v. General Film Co., D.C., 244 F. 985. The authorities to the contrary are not impressive. Haskell v. Perkins, 28 F.2d 222, was a District Court decision holding that the cause of action survived to the extent of the jury award, but not as to the right to have the damages tripled. Caillouet v. American Sugar Refining Co., 250 F. 639, and Bonvillain v. American Sugar Refining Co., 250 F. 641, were District Court decisions rendered by the same judge in a Circuit where the Court of Appeals in the later decision of Fazakerly v. E. Kahn's Sons Co., supra, approved the contrary doctrine. The unsoundness of their reasoning was pointed out by Judge Sparks in his opinion in Moore v. Backus, supra.

■ Since the action sued on is one which survives under the statute creating it, we think it clear that the five year, and not the one year, limitation prescribed by the Virginia statute is the limitation applicable; for it is the five year limitation which applies when the action is "for a matter of such nature that in case a party die it can be brought by or against his representative". Defendants argue that, although the cause of action be held to survive under a proper

interpretation of the federal statute creating it, it would not survive under the rule of the Virginia law if created by a state statute of like import, and therefore is not an action which survives within the meaning of the state statute of limitations. The test prescribed by the statute of limitations, however, is survivability; and this must mean survivability under the law relating to the cause of action, since no test of survivability is prescribed by the statute of limitations. If it be said that the statute of limitations presumably has reference to causes of action created by state laws, the answer is that it is being applied here to a cause of action created by federal statute and that the essential attributes of that cause of action can be determined only in the light of the federal law. Survivability is the test under the statute of limitations; the cause of action sued on is one that survives; and the position that, for the purposes of the statute of limitations, it should be treated as one that does not survive, finds no support either in reason or in authority. The position, moreover, is entirely without practical significance here; for if we look to state law to determine whether such a cause of action if created by state law would survive, we reach the conclusion that it would, which brings us to the discussion of the third question.

We have reached the conclusion that the cause of action here involved should be held to survive, even though the question of its survivability be determined solely by the law of Virginia. There is no decision of the Virginia courts on the subject; and we would not be required to depart from our concept of the proper common law rule to be applied in that state by speculating as to what the Virginia courts might decide in the light of their decision on questions somewhat analogous. Powell v. Maryland Trust Co., 4 Cir., 125 F.2d 260, 269; New England Mut. Life Ins. Co. v. Mitchell, 4 Cir., 118 F.2d 414. This is true where the question is one of statutory interpretation, if there is no controlling state decision on the point involved. Carroll v. Carroll, 16 How. 275, 286, 14 L.Ed. 936. And the rule is peculiarly applicable in a case such as this, where the state statute is modeled on the federal act and a cause of action created thereunder presumably has the same attributes as a cause of action created by the federal act. In the light of the Virginia decisions, however, and the rule that they lay down generally, we think it clear that such a cause of action as that here sued on survives, without reference to the federal rule applicable to survivability of causes of action created by the federal statutes.

The common law as to survival has been modified in Virginia by a statute, Code, sec. 5385, which provides: "An action of trespass, or trespass on the case, may be maintained by or against a personal representative for the taking or carrying away any goods, or for the waste or destruction of, or damage to, any estate of or by his decedent."

As said by this Court, speaking through Judge Northcott in Pathe Exchange v. Dalke, 4 Cir., 49 F.2d 161, 163, "There can be no doubt that the purpose of the Virginia statute was remedial, and enlarged rather than restricted the classes of action, that survived the common law." See, also, Lee's Adm'r v. Hill, 87 Va. 497, 12 S.E. 1052, 24 Am.St.Rep. 666, and Trust Co. of Norfolk v. Fletcher, 152 Va. 868, 148 S.E. 785, 73 A.L.R. 1111. And as a result of the statute and the decisions construing it, we think that the class of actions which survive in Virginia has been enlarged to include those which involve injury to a person in his property or business as distinguished from purely personal wrongs. Thus in Winston v. Gordon, 115 Va. 899, 80 S.E. 756, 764, it was held that a cause of action against directors of a bank for losses sustained as a result of their negligence in its management would survive. The opinion in that case was written by Judge Keith, one of the ablest of the judges of Virginia, who cited with approval the following rule quoted from 1 Cyc. p. 49: "At common law, as a general rule, the qualities of assignability and survival are tests each of the other and are convertible terms. The question whether an action survives depends upon the nature of the action and not upon the form of it. It has been held that the line of demarcation at common law, separating those actions which survive from those which do not, is that in the first the wrong complained of affects, primarily and principally, property and property rights, and the injuries to the person are merely incidental, while in the latter the injury complained of is to the person, and the property and rights of property affected are merely incidental. At common law the rule was a general one that actions ex contractu survived the death of a party to the action, but, where the damage resulting was to the person, the rule was otherwise."

Judge Keith quoted from Graves on Pleading, p. 16, the following statement of the rule: "That actions ex delicto (torts) are

frequently assignable in equity there can be no doubt; and at law the assignee can sue in the name of the assignor, as was done on the assignment of a bond. But all actions ex delicto are not assignable, even in equity, for it is sometimes considered against public policy, even in our day, to allow such an action to be made over to an assignee for money. Then what tort actions are assignable? The answer is: Such only as survive to or against the personal representative, if one of the original parties dies. Then what tort actions survive? The answer is: Those for wrong to property, real or personal, or which grow out of breach of contract, but not for wrongs done to the person or reputation, or any purely personal wrong, apart from property or contract. An action for breach of promise of marriage does not survive at common law, nor under the Virginia statute." And from White & Tudor's leading cases in Equity, vol. 2, pt. 2, he quoted: "To bring a cause of action within the scope of this doctrine, it must result from an injury to an existing right of property, or from the breach of a contract which would have conferred such a right if it had been fulfilled; and the right to compensation in damages for injuries which are merely personal, as affecting the sufferer in mind, body, or reputation, cannot be assigned in equity or at law." And to this he added: "The statement of Mr. Graves must always be borne in mind, that actions are assignable which survive, and that those which do not survive are not assignable." And this was followed by the following quotation from White & Tudor: "All choses in action, embracing demands which are considered as matters of property or estate, are now assignable either at law or in equity. Nothing is excluded but mere personal torts which die with the party. A claim, therefore, for property fraudulently or tortiously taken or received, or wrongfully withheld, and even for an injury to either real or personal property, may be assigned. The principle is the same where property is lost or injured through the negligence of an agent, bailee, or common carrier; and hence the transfer of such a cause of action will confer an equitable right on the assignee."

It seems perfectly clear that if an action for damages against directors of a bank for loss resulting from their negligence survives under the law of Virginia, an action for damages for loss occasioned to one's business from conspiracy in violation of the anti-trust act must needs survive on the same principle. Both involve injury to property or estate as distinguished from mere personal wrong; and neither involves, in any technical sense, the taking or carrying away of goods or the wasting or damaging of an estate. And it should be noted that the action in Winston v. Gordon was held to survive on the strength of the authorities to the effect that there is survival where the wrong complained of "affects primarily and principally property and property rights".

A more recent decision of the Virginia court and one which carries the doctrine of survival even farther than Winston v. Gordon is the case of Watson v. Daniel, 165 Va. 564, 183 S.E. 183, 184, decided in 1936. In that case it was held that a cause of action of a parent for damages on account of the loss of services of a minor child and expenditures made to treat the child for injuries was one that survived under the law of Virginia. The court, speaking through Mr. Justice Gregory, said:

"At common law, personal actions, with few exceptions, died with the death of either party, but by statute now in Virginia all personal actions survive except some actions in tort. Mr. Harrison in his work on Wills and Administration, paragraph 426, says: 'Those actions survive which consist of injuries to property, real and personal, or grow out of breach of contract. All actions, therefore, for injury to character or the person die with the death of either party. Actions for libel and slander or malicious prosecution, assault and battery, and actions of like character die with the person injured.' The present action would abate at common law upon the death of the plaintiff. The sole inquiry, which is determinative of this case, is whether or not under our statutes the action would survive the death of the plaintiff. If so, the five-year limitation applies; if not, the one-year limitation is applicable.

"It was said by Judge West in Trust Co. v. Fletcher, 152 Va. 868, 148 S.E. 785, 787, 73 A.L.R. 1111, 'Whether the one-year or the five-years statute applies depends upon whether or not the cause of action would survive. If it would survive, the limitation is five years; if it would not survive, the limitation is one year.' The test under section 5818 is survivorship. Then what tort actions survive? The answer of this court is found in Winston v. Gordon, 115 Va. 899, 80 S.E. 756, 763, where Judge Keith, quoting from Graves on Pleading, p. 16, said: 'Those for wrong to property, real or per-

sonal, or which grow out of breach of contract, but not for wrongs done to the person or reputation, or any purely personal wrong, apart from property or contract.'

\* \* \* \* \*

"The plaintiff in the present case has suffered no injury to his person. His injury is to his own personal estate; that is, he has been compelled to pay out of his personal estate the medical and hospital expense for his child. He has also lost the services of his child. It cannot be said that the wrong to the plaintiff is merely personal, affecting his person only, apart from his personal estate."

It will be noted that the cause of action in Watson v. Daniel was essentially the same as that in Cregin v. Brooklyn Cross-town Railroad Co., 75 N.Y. 192, 31 Am.Rep. 459, which was cited by Judge Keith with approval in his opinion in Winston v. Gordon and from which he quoted as follows: "The husband 'had a right to the services of his wife; they were of pecuniary value to him; and any wrong by which he was deprived of those services, or put to expense to remedy or palliate the consequences of the injury to his wife, was a wrong done to his rights and interests. Adopting the construction that pecuniary rights and interests only are protected by the statute, these were plainly involved \* \* \*' ".

Certainly, if an action for loss sustained through injury to a wife or child survives on the ground that it is an injury to the estate of plaintiff, a fortiori loss sustained as a result of injury to his business must also survive.

The case chiefly relied on by defendants and by the court below is Mumpower v. City of Bristol, 94 Va. 737, 27 S.E. 581. It will be noted that this was a much earlier case than either Winston v. Gordon or Watson v. Daniel and that the opinion, while written by Judge Keith, does not display the careful analysis of the law which is shown by him in the opinion in Winston v. Gordon. Mumpower v. City of Bristol is described by him in Winston v. Gordon as an action brought "for maliciously and without probable cause suing out an injunction against the plaintiff, whereby the operation of his mill was suspended". The action was thus classed as one for malicious prosecution, which is universally treated as a personal action which does not survive, the damage to property sustained thereby being considered not as direct but as consequential upon the injury to the person. See Watson v. Daniel; supra; Woodford v. McDaniels, 73 W.Va. 736, 81 S.E. 544, 52 L.R.A.,N.S., 1215, and note; 1 C.J. § 303; 1 C.J.S., Abatement and Revival, § 132.

Judge Keith, in the case of Winston v. Gordon, quoted from the opinion in Mumpower v. City of Bristol a passage containing the following statement: "It is true that the language of the statute is comprehensive and embraces damage of any kind or degree to the estate, real or personal, of the person aggrieved; but the damage must be direct, and not the consequential injury or loss to the estate which flows from a wrongful act directly affecting the person only". And distinguishing the situation in Winston v. Gordon from that in Mumpower v. City of Bristol, he said: "As we have already said, there is no circumstance or element of injury to the person in this case. The wrong, if any, was to rights of property, which, if the facts alleged in the bill are true, was of a serious and grievous nature." The same distinction was drawn in Watson v. Daniel, supra, the court saying of the opinion in Mumpower v. City of Bristol: "The court further held that the language of the statute is comprehensive and embraces damages of any kind or degree to the estate, real or personal, of the person aggrieved; but the damage must be direct, and not the consequential injury or loss to the estate which flows from a wrongful act directly affecting the person only."

Other Virginia cases relied upon by defendants do not seem to be remotely in point. Birmingham v. Chesapeake & O. Ry. Co., 98 Va. 548, 37 S.E 17, was a case of personal injury. Cover v. Critcher, 143 Va. 357, 130 S.E. 238, and Vance v. Maytag Sales Corp., 159 Va. 373, 165 S.E. 393, were actions for damages for deceit and fraud where the losses sustained, as in the case of malicious prosecution, were not direct but consequential. All of these cases were distinguished by Mr. Justice Gregory in Watson v. Daniel, supra, on the ground that any damage to property was indirect and consequential. In Trust Co v. Fletcher, 152 Va. 868, 148 S.E. 785, 73 A.L.R. 1111, however, where the action was to recover the price paid for worthless stock, it was held that the wrong done in obtaining plaintiff's money for the stock was a direct injury to property, that the action would survive and that the five year limitation was applicable.

A careful examination of the Virginia cases convinces us that, under the general principles of the law of Virginia

relating to survival of actions, an action for damages to business resulting from conspiracy in violation of the anti-trust acts is an action that survives. Consequently, if we look only to the law of Virginia as embodied in the Virginia decisions, the five year and not the one year limitation of the statute is the one here applicable.

For the reasons stated, the order dismissing the action as barred by the statute of limitations will be reversed, and the cause will be remanded for further proceedings not inconsistent herewith.

Reversed.