**BANANA DISTRIBUTORS, INC.,**
**Plaintiff,**

v.

**UNITED FRUIT COMPANY et al.,**
**Defendants.**

United States District Court
S. D. New York.
March 29, 1961.

Austin, Burns, Appell & Smith, New York City, for plaintiff. Blackwell Smith, New York City, Arnold, Fortas & Porter, Thurman Arnold, Ernest Leff, Washington, D. C., of counsel.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for defendants. Hal F. Reynolds, Ralph M. Carson, New York City, of counsel.

LEVET, District Judge.

Plaintiff by this motion seeks an order to substitute the representatives of defendant John A. Werner, deceased, in place and stead of said defendant and to amend the proceedings in this action accordingly.

John A. Werner, formerly President of the defendant Fruit Dispatch Company, and a Director of United Fruit Company, a defendant herein, died on August 27, 1960. Thereafter, on October 27, 1960, letters testamentary were issued by the Surrogate's Court of New York County to Charles M. Schaefer, residing at Lagoona Drive, Brightwaters, New York, and James L. Kaye, residing at 84 Rutgers Place, River Edge, New

Jersey, as executors of the will of said John A. Werner, deceased.

The motion is made pursuant to Rule 25(a) (1) of the Federal Rules of Civil Procedure, 28 U.S.C.A. which is as follows:

"*If a party dies and the claim is not thereby extinguished,* the court within 2 years after the death may order substitution of the proper parties. If substitution is not so made, the action shall be dismissed as to the deceased party. The motion for substitution may be made by the successors or representatives of the deceased party or by any party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of a summons, and may be served in any judicial district." (Emphasis added.)

The action is a private antitrust action for treble damages under Title 15 U.S.C.A. § 1 et seq. The complaint charges that plaintiffs have sustained losses by reason of defendants' alleged monopoly power, monopolistic prices, preferred allocations (of bananas), etc., conspiracy, etc., in which defendant Werner was alleged to have had a part as a coconspirator.

The complaint (Par. 50) alleges both a loss in plaintiff's *profits* of $1,209,427 and a loss in the *value* of its business of $1,221,946. Although the amount of these claims was subsequently reduced by plaintiff, Banana Distributors, Inc., before trial (which trial resulted in a jury disagreement), the proof presented by plaintiff in reference to damages included: (1) claims for damages for alleged loss of profits in the sale of bananas and for loss by reason of allegedly excessive charges on banana purchases; and (2) claims for injury for alleged loss of good-will value of the business, which, in turn, was based upon allegedly diminished earnings. See this court's opinion on motion for dismissal, etc., after trial, 1958, 162 F.Supp. 32, 45–48.

In this case there is no specific allegation in the complaint that Werner personally benefited in any respect from the injuries alleged to have been sustained by the plaintiff.

The question of benefit to Werner was raised by the court on argument of this motion on December 21, 1960, and the argument and statements of counsel were recorded. Counsel for plaintiff in answer to questions posed by the court stated:

"In so far as he was an individual and being sued as an individual not in a corporate capacity, I would have to concede that there was no benefit to Werner.

\* \* \* \* \* \*

"I think we would have to claim that as president of the corporation and in his official capacity whatever benefits redounded to the corporation also redounded to him." S.M. 3.

[The only offices held by Werner were the Presidency of Fruit Dispatch and Mello-Ripe, United's subsidiaries, and a Directorship of United Fruit. It does not appear that Werner was a stockholder or had any interest other than a salary.]

Plaintiff's counsel continued:

"We do not mean to say that Werner lined his pockets as an individual with respect to this or secured any moneys or anything of that type from Elbaum or from the corporation of which Elbaum was a principal, and put it in his pocket, but in so far as the competition in Connecticut was regulated, in so far as Fruit Dispatch acquired a customer First National Stores, by taking it from the plaintiff, in so far as Werner, as president of Fruit Dispatch and president of Mello-Ripe was able to increase prices of Fruit Dispatch through the question of alleged dumping to Mello-Ripe, of which he

was also an officer, I think in that sense he could have been benefited * * *. S.M. 3–4.

\* \* \* \* \* \*

"Well, if the corporation benefited by having higher prices, he, as president of the corporation, benefited in the same respect." S.M. 34.

Although the court inquired of plaintiff's counsel whether he wished to amend the complaint to allege benefit to Werner, he stated that there was no application to amend at this time. S.M. 25–26.

Attorneys for the executors of Werner, in opposing this motion to substitute, base their position on two cases decided by the Court of Appeals of this circuit: United Copper Securities Co. v. Amalgamated Copper Co. et al., 2 Cir., 1916, 232 F. 574, and Sullivan v. Associated Billposters and Distributors et al., 2 Cir., 1925, 6 F.2d 1000, 42 A.L.R. 503.

### 1. The United Copper Case

The United Copper decision primarily involved the plaintiff's appeal from a dismissal of a third amended complaint. The issue of survivorship was raised by defendant solely in connection with its contention that a cause of action under the antitrust laws was not assignable. On this issue the appeals court decided that such a cause of action survived the death of the injured party or plaintiff and, therefore, was assignable.

The court, however, considered a second question, to wit, whether a cause of action under the antitrust laws survived against the estate of a deceased person. As to this, the court stated:

"The second question is more doubtful, but it was held in U. S. v. Daniel, 6 How. 11, 12 L.Ed. 323, an action against the executors of a sheriff for a false return, that such a cause of action, being ex delicto, would not survive against executors, unless the decedent secured some benefit at the expense of the sufferer. This exception will be a matter of proof, and is not a reason for striking the executors out as parties." 232 F. at page 578.

The expression of this holding, in the headnote at least, is definite and certain:

"8. Abatement and Revival ⊜57 —Survivor of Actions—Monopolies.

"Where recovery for the results of a monopolistic conspiracy is sought under Sherman Act, § 7, the action will survive against the estate of decedent, in case he secured some benefit at the expense of plaintiff." 232 F. at page 575.

The complaint in the United Copper Securities case alleged that a conspiracy in violation of the Sherman Act had been entered into by certain decedents during their lifetime and by their executors after their death,[1] in association with other defendants. The pleadings charged that the decedents, Leonard Lewisohn and Henry H. Rogers (whose executors were named as defendants), together with others, organized and controlled certain copper mining enterprises in Montana and conspired to bring about a monopoly in interstate commerce in copper. Third Amended Complaint, Paragraphs IX, X and XI.[2] Rogers and Lewisohn, in con-

---

[1.] The allegations concerning the executors had been ordered stricken by a court order. The Circuit Court of Appeals declared that the pleadings should have charged the executors officially for their testators' acts and individually for the executors' own acts. See 232 F. at page 576.

[2.] The decedent Henry H. Rogers, together with others, was alleged to have "organized and controlled" the Anaconda

Copper Mining Company, also named as a defendant. Third Amended Complaint, Paragraph IX. The decedent Leonard Lewisohn and others were said to have "controlled as stockholders, officers, directors and agents" certain copper mining companies and to have conceived a conspiracy to yield larger profits through a copper monopoly in interstate commerce. Third Amended Complaint, Paragraph X.

junction with others, allegedly caused the defendant Amalgamated Copper Company to be incorporated and conspired with controlling stockholders of other corporations to form a copper trust. Third Amended Complaint, Paragraph XI. Due to the alleged conspiratorial activities of the decedents and the other defendants, plaintiff claimed its assignor had been "damaged and injured in their aforesaid business and property, by the destruction of the good will, credit and standing of said business and of the assets thereof and have sustained damages in excess of Four million Dollars \* \* \*." Third Amended Complaint, Paragraph XVIII.

The allegations in the United Copper case, if assumed to be true, therefore presented a clear indication that the decedents and their estates had individually and personally benefited from the alleged acts complained of. The complaint is replete with allegations charging named individuals, including the decedents Rogers and Lewisohn, with having organized, controlled, and manipulated corporate enterprises and conspiring to combine their corporate forces to establish an unlawful copper monopoly in Montana, to the detriment of other competitors.

### 2. The Sullivan (or Billposters) Case.

In the amended complaint in Sullivan v. Associated Billposters and Distributers, supra, 6 F.2d 1000, as it appears from the record on appeal:

(1) The plaintiff was alleged to be the assignee for the benefit of creditors of C. J. Sullivan Advertising Company, which company was engaged in the billposting and advertising business, displaying such advertising on its billposting plants and marketing said advertising "to the Billposters throughout the States of the United States that were engaged in Interstate Commerce." Amended Complaint, Paragraphs II and III.

(2) The defendant, Associated Billposters and Distributers of the United States and Canada, was alleged to be a New York corporation, the membership of which consisted of individuals, firms and corporations engaged in business as employing billposters at different points in the United States and Canada. Amended Complaint, Paragraph IV.

(3) The deceased defendant, one Samuel Pratt, was alleged not only to have been a member of the Board of Directors of the defendant association, hereinabove mentioned (Amended Complaint, Paragraph IX), but to have been either the proprietor or the manager of one or more local billposting outfits in the United States or Canada. Amended Complaint, Paragraph XI.

(4) The defendant association's membership was alleged to be so restricted as to include not more than one member in any one city or town. Amended Complaint, Paragraph IV.

(5) The various defendants, including Pratt, were alleged to have combined and conspired to violate the antitrust laws of the United States, with the result that, with the exception of a few cities and towns in the United States, it was impossible for any advertiser to have national work done except by members of the association and upon terms and prices arbitrarily fixed by the association. Amended Complaint, Paragraphs XX–XXVI.

(6) As a result of the aforesaid conditions, (a) the plaintiff's billboards were allegedly torn down or caused to be torn down and destroyed by defendants; (b) the plaintiff's customers were alleged to be coerced by defendants and prevented from entering into contracts with the plaintiff and from carrying out contracts with plaintiff for advertising, as a result of which the "business" of plaintiff was destroyed and plaintiff made a general assignment for the benefit of creditors. Amended Complaint, Paragraph XXXIII.

(7) The Amended Complaint also alleged that as a result of these acts, (a)

the plaintiff was damaged in that its business was rendered unprofitable and destroyed; (b) the plaintiff's profits were diminished and it was forced to expend large sums of money for the protection of its business and property, all to the damage of $400,000. Amended Complaint, Paragraph XXXIV.

Judge Learned Hand, then sitting in the district court, denied the plaintiff's motion to substitute the executors of the deceased Samuel Pratt as defendants. In a brief opinion, dated April 10, 1924, Judge Hand explained the reasons for his decision:

"It seems archaic still to apply such rules, yet the law has really never changed. U. S. v. Daniel, 6 How. 11 [12 L.Ed. 323] was recognized as continued law in Patton v. Brady, 184 U.S. 608 [22 S.Ct. 493, 46 L.Ed. 713] and Iron Gate Bank v. Brady, 184 U.S. 665 [22 S.Ct. 529, 46 L.Ed. 739]; United Copper Sec. Co. v. Amalgamated Copper Co., [2 Cir.] 232 Fed.Rep. 574 did no more than follow the existing law. I cannot ignore it, because I may not like it. The rule appears to be based on the idea that the recovery will at least bear some relation to what the decedent has received. Of course, it is not so limited and the relation between the two is not usually close. *However, where no definite property has passed to the tort feasor I can find no suggestion anywhere that the*

*cause of action survives."* See Record on Appeal, p. 46. (Emphasis added.)

Thus, Judge Hand, who had served as one of the appellate judges in the United Copper case and concurred in part in the court's opinion therein, apparently felt constrained to follow the then existing law, as expressed in the Copper case, and deny the plaintiff's motion for substitution. According to Judge Hand, benefit accruing to a deceased defendant had to take the form of "definite property" wrongfully taken from the plaintiff.

In reversing the district court, however, the court of appeals in Sullivan ruled that the benefit received by a deceased defendant need not take the form of *specific* property wrongfully appropriated. The tort-feasor's enjoyment of profits illegally diverted from the plaintiff, as had been alleged in the Sullivan complaint, was held to be sufficient grounds for substituting his executors as defendants.[3]

Consequently, Circuit Judge Rogers, in discussing this factor of benefit to the deceased defendant Pratt, wrote:

"In the case now before the court it does not appear that the deceased defendant [Pratt] has in his estate any of the plaintiff's property. Assuming as we must the allegations of the complaint to be true, they amount to a claim that the estate of the decedent has been increased by profits made by the defendants

3. In the plaintiff's brief on appeal, it was argued:
"Presumably, what the Sullivan Company lost the defendants gained." P. 9.
* * * * *
"It is the impairment or destruction of a plaintiff's business and business opportunities that constitutes the wrong and is the basis for admeasuring his damages. It is a reasonable inference that what the plaintiff in such an action lost the defendants measurably have gained. Benefit to the defendants by way of increase of their trade is hoped for, or the conspiracy or combination would not be formed. Benefit presumably results

when the combination or conspiracy is successful. It cannot be assumed, in a field where an unlawful combination successfully operates to the detriment of its victims, that any large proportion of the business lost by the latter dissolves into thin air or fails to be acquired by the members of the combination." P. 10.
* * * * *
" * * * The nature of the cause of action is such that the inference of benefit to the decedent's estate if well-nigh incontrovertible." P. 13.
The court of appeals seems to have recognized and accepted these contentions.

wrongfully diverted from the plaintiff." [4] 6 F.2d at page 1007.

In reversing the district court, the court of appeals, in my judgment, did not repudiate the "benefit doctrine," but in effect rejected the contention that the survival of a cause of action was limited solely to situations involving a detriment to the *"property"* of the plaintiff and a corresponding benefit in *"property"* in the hands of the defendant (or his estate). The opinion in Sullivan must be regarded as marking a new development in the law in its extension of the survival of actions against deceased defendants to situations where the plaintiff allegedly sustained *"business"* damages as a result of the defendant's wrongful conduct. A "benefit" was involved here as in those cases concerned with "property" damages.

A case of more recent vintage in this district dealing with this same problem is that of Henry T. Bush and C. Ray Phillips, Receivers of Missouri-Kansas Pipe Line Co. v. Henry L. Doherty et al., D.C.S.D.N.Y.1940, L. 51–284 (unreported). [5] Here, in a private action for treble damages under the Sherman Anti-Trust Act, District Judge Edward Conger granted the plaintiff's motion to substitute the representatives of a deceased defendant on the authority of the Sullivan case, supra. However, the complaint in the Bush case pleaded sufficient allegations to warrant trial of a claim for benefits accruing to the deceased defendant from business wrongs allegedly sustained by the plaintiff.

Hence, in all three cases adjudicated in this circuit (viz., United Copper Securities, Sullivan v. Associated Billposters, and Bush v. Doherty), claims of benefit to the deceased defendant-tort-feasor were present or clearly inferable. In any event, no other cases in this circuit concerned with the problem have been discovered by the court or brought to its attention by the attorneys for the instant parties. What we do have, therefore, are three cases in which the causes of action held to survive as against deceased defendants involved some benefit allegedly accrued to the defendant as a consequence of the damages incurred by the plaintiff.

The restrictive, and at times harsh, common-law doctrine governing the survival of causes of action was abrogated in part by the English statute of 4 Edward III, c. 7, enacted in 1330. [6] But, the narrow scope of the statute failed to provide for the survival of even the specific causes of action delineated therein as *against* representatives of deceased defendants. Thus, at the outset, a distinction was made at early common law regarding the survival of actions between deceased plaintiffs and defendants.

Cases in which causes of action were held to survive the plaintiffs' death (and hence could be continued by their representatives) are therefore of little assistance in determining the question before this court. [7]

4. The appeals court thus rejected the argument contained in the appellees' brief that: "There is no allegation in the complaint that he [Pratt] derived any pecuniary benefit at the expense of the plaintiff, the alleged sufferer herein." Appellees' brief, p. 2.

5. This action was ultimately settled and discontinued by stipulation dated March 18, 1942, and filed March 23, 1942, without costs to any party.

6. " * * * Whereas in times past executors have not had actions for the trespass done to their testators, as of the goods and chattels of the same testators carried away in their life, and so such trespasses have hitherto remained unpunished; it is enacted that the executors in such cases shall have an action against the trespassers to recover damages in like manner as they, whose executors they be, should have had if they were in life." Quoted in Pollock, Law of Torts 64 (12th Ed.1923). See also Moore v. Backus, 7 Cir., 1935, 78 F. 2d 571, 573–574, 576, 101 A.L.R. 379.

7. See Van Beeck v. Sabine Towing Co., 1937, 300 U.S. 342, 57 S.Ct. 452, 81 L.

Hicks v. Bekins Moving & Storage Co., 9 Cir., 1937, 87 F.2d 583, was primarily concerned with the assignability of a claim for treble damages for violation of the Sherman Anti-Trust Act, the court holding that such a cause of action was assignable since it survived the death of the *injured* party. The precise question of survivability *against* a deceased *defendant,* however, was not decided.[8]

In Cox v. Roth, 1955, 348 U.S. 207, 75 S.Ct. 242, 99 L.Ed. 260, survivability of a seaman's cause of action under the Jones Act, 46 U.S.C.A. § 688, against the representatives of a deceased defendant was sustained by virtue of the Supreme Court's admittedly liberal interpretation of the remedial statutes involved. As Mr. Justice Clark observed: "The extreme harshness of the old common-law rule abating actions on the death of the tortfeasor flies in the face of the expressed congressional purpose to provide for 'the welfare of seamen.' The Jones Act 'As welfare legislation * * * is entitled to a liberal construction to accomplish its beneficent purposes.' Cosmopolitan Co. v. McAllister, 337 U.S. 783, 790, [69 S.Ct. 1317, 9 L.Ed. 1692]."[9] 348 U.S. at page 210, 75 S.Ct. at page 244.

The crucial question before this court is whether, under the present law of the Second Circuit, a personal benefit accruing to a deceased defendant from his allegedly tortious acts affecting the plaintiff's property and business in violation of federal anti-trust legislation is imperative for the survival of a private action for treble damages under such statutes as against the representatives of the deceased wrongdoer. Other circuits have cited the Second Circuit's decision in Sullivan v. Associated Billposters, etc., supra, as support for the general proposition that a cause of action created by the Sherman Act for injuries caused the plaintiff's property or business by the defendant's unlawful practices survives. See, e. g., Barnes Coal Corp. v. Retail Coal Merchants Ass'n, 4 Cir., 1942, 128 F.2d 645, 648–649; see also Rogers v. Douglas Tobacco Board of Trade, 5 Cir., 1957, 244 F.2d 471, 483, note 11.

In the Barnes Coal Corp. case, supra, Circuit Judge John J. Parker wrote:

"The cause of action created by the Sherman Act is based, not on injuries affecting the person, but on injuries affecting property rights. It is given to 'any "person" who shall be injured in his business or property' by unlawful practices forbidden by the act; and this means that the business or property of plaintiff must have been, in some way, injured by the unlawful practices. Monarch Tobacco Works v. American Tobacco Co., C.C., [6 Cir.], 165 F. 774. This, of course, is an injury of a very different sort from an injury to the person; and the great weight of au-

---

Ed. 685; Dellaripa v. New York, New Haven & Hartford R. R., 2 Cir., 1958, 257 F.2d 733; Nelson v. Knox, 6 Cir., 1956, 230 F.2d 483, 484; Moore v. Backus, 7 Cir., 1935, 78 F.2d 571, 101 A.L.R. 379, all of which involved deceased *plaintiffs* rather than deceased *defendants.*

8. In arguing the assignability of a right of action under the Sherman Anti-Trust Act, counsel for the appellant Hicks stated in his brief:

"Before leaving this point one other case must be noticed. It was an action under the Sherman law in which it was sought to hold the personal representatives of a deceased defendant. The reasoning of the opinion is rather hard to

follow, but the court's conclusion to be gathered therefrom is that the cause of action survived because the plaintiff had suffered an injury to business. On this ground it is possibly authority for appellant. Sullivan v. Associated Bill Posters, etc. (C.C.A.), 6 Fed.(2nd) 1000." See Appellant's brief, p. 15.

9. The court further noted that since its decision was "confined to an interpretation of the Jones Act, there is no need to consider the 'slender basis' for the general admiralty rule against such survivorship of actions. See Just v. Chambers, 312 U.S. 383, 387, note 4 [61 S.Ct. 687, 85 L.Ed. 903]." 348 U.S. at page 210, 75 S.Ct. at page 244.

thority is to the effect that the cause of action survives. Hicks v. Bekins Moving & Storage Co., 9 Cir., 87 F.2d 583; Moore v. Backus, 7 Cir., 78 F.2d 571, 101 A.L.R. 379; Fazakerly v. E. Kahn's Sons Co., 5 Cir., 75 F.2d 110, 114; Sullivan v. Associated Billposters and Distributors, 2 Cir., 6 F.2d 1000, 42 A.L.R. 503; United Copper Securities Co. v. Amalgamated Copper Co., 2 Cir., 232 F. 574; Imperial Film Exchange v. General Film Co., D.C., 244 F. 985." 128 F.2d at page 649.

The Barnes case concerned an action instituted by a retail coal dealer to recover triple damages pursuant to 15 U.S.C.A. § 15, the complaint charging a conspiracy among the defendants in violation of the federal antitrust laws. The plaintiff alleged that as a result of the defendants' conspiratorial acts, inter alia, the volume of its business and the amount of its profits had been curtailed. However, the principal question before the appeals court was the proper state statute of limitations to be applied to this action, an issue in turn dependent upon whether or not the action was of such a nature that it survived the death of a person *by or against* whom it might have been brought. Consequently, in Barnes, there was actually neither a deceased plaintiff nor a deceased defendant, but a hypothetical determination of the problem of survival upon which the court's decision as to the appropriate statute of limitations ultimately pivoted. In view of the actual factual situation in Barnes, therefore, and despite its extensive and persuasive analysis of the law governing the survival of actions, the Barnes case cannot be regarded as possessing significant precedent value in resolving the instant problem.

In Rogers v. Douglas Tobacco Board of Trade, supra, which also involved an action for treble damages for alleged violations of the Sherman Anti-Trust Act, the district court sustained the defendants' motion to dismiss and for judgment on the pleadings. One of the defendants died subsequent to the commencement of the action and after process had been served on him. Touching on this aspect, the Fifth Circuit Court of Appeals stated:

" * * * The district court, *while considering that the personal representatives had become parties to the cause,* denied their motion and plea in abatement 'in view of the order of this Court dismissing said cause as to all defendants.' " 244 F.2d at page 483. (Emphasis added.)

The appellate court's opinion continues:

"The policy of the federal statute, we think, requires the survival of the cause of action to the extent that actual damages may be recovered." 244 F.2d at page 483.

Cited in a footnote in support of this statement is the case of Sullivan v. Associated Billposters, etc., supra, 6 F.2d 1000, 1002, 42 A.L.R. 503. See 244 F.2d 483, note 11. This terse discussion and the somewhat ambiguous reference to the Sullivan decision affords little aid in resolving the present difficulty. The opinions in Barnes and Rogers neither discuss nor mention the "enrichment or benefit" principle enunciated earlier by the Second Circuit in Sullivan. Whether this omission is meaningful must perforce remain a matter for speculation in the absence of any affirmative language by these circuit courts.

This court is cognizant of the fact that if confronted by an attempt to take advantage of a conflict of decisions in circuits, a district court must apply the law as set forth by the court of appeals of the circuit in which the district is located. United States ex rel. Altieri v. Flint, D.C.D.Conn.1943, 54 F. Supp. 889, 892, affirmed per curiam, 2 Cir., 1944, 142 F.2d 62. As Judge Caffey has stated: "A District Judge owes obedience to the holdings of the Circuit

Court of Appeals for the circuit in which is located the District Court in which he sits." The Wollaston, D.C.S.D.N.Y.1945, 62 F.Supp. 284, 285, affirmed per curiam sub nom., Martin Marine Transportation Company v. The Steamtug Bermuda, 2 Cir., 1946, 157 F.2d 431. See also McGee v. Southern Pacific Company, D.C.S.D. N.Y.1957, 151 F.Supp. 338, 339; Abbott v. United States, D.C.S.D.N.Y.1945, 61 F.Supp. 989, 992; Diatel v. Gleason, D.C. S.D.N.Y.1937, 22 F.Supp. 355, 356.

■ This court is also aware that trial courts are entitled to rely upon earlier pronouncements of the courts of appeals of their own circuit. California State Board of Equalization v. Goggin, 9 Cir., 1957, 245 F.2d 44, 45, certiorari denied 1957, 353 U.S. 961, 77 S.Ct. 863, 1 L.Ed. 2d 910. "In a system of jurisprudence founded upon stare decisis it does not lie within the domain of a Court of first instance to take upon itself to upset a rule of long standing without most pressing circumstances to demand it." McCarthy v. Palmer, D.C.E.D.N.Y.1939, 29 F.Supp. 585, 586, affirmed, 2 Cir., 1940, 113 F.2d 721, certiorari denied, 1940, 311 U.S. 680, 61 S.Ct. 50, 85 L.Ed. 438.

■ It is of course elemental that "the authority of a former decision as a precedent must be limited to the points actually decided on the facts before the court * * *." 21 C.J.S. Courts § 209, p. 380, and cases cited therein at note 8. "It is commonly held that a decision is authoritative only on questions which it was necessary to decide, and were involved, or in issue, in the case." 21 C.J.S. Courts § 209, p. 382, and cases cited therein at notes 12, 13 and 14.

An examination and comparison of the opinions in United Copper Securities and Sullivan would show that despite what some may regard as an apparent disharmony, the two cases are not necessarily incompatible. The Sullivan case obviously did not eliminate the "benefit theory" adverted to (or perhaps more correctly, adumbrated) in the closing paragraph of the Copper opinion. In Sullivan,

Circuit Judge Rogers, as previously indicated, made particular reference to the fact that the pleadings before the appellate court amounted "to a claim that the estate of the decedent has been increased by profits * * * wrongfully diverted from the plaintiff." 6 F.2d at page 1007. Moreover, Judge Rogers prefaced his excellent and comprehensive review of the common-law doctrine of the survival of actions with the pertinent observation that "it would seem that the representatives of a deceased person should be liable to answer out of their decedent's estate for the wrongful acts committed by him in his lifetime, whereby another had suffered in his estate, and by which the estate of the wrongdoer had increased the amount of his own estate." 6 F.2d at page 1003. The Sullivan opinion, moreover, is replete with citations which emphasize the basic element of benefit to the deceased tort-feasor. See 6 F.2d at page 1003, 1005–1007.

In noting that the "question whether the cause of action survived as against the estates of deceased persons * * * was not fully considered" in United Copper Securities, 6 F.2d at page 1008, Judge Rogers commented:

"The evident intention of the court was to leave that question open, to be determined upon the evidence adduced at the trial showing that the decedent secured some benefit at the expense of the sufferer. The court plainly did not determine what 'benefit at the expense of the sufferer' would have to be shown to enable the plaintiff to recover. We therefore do not consider that case as binding upon us at this time in respect of the question which is now presented. Moreover the District Judge, who made the order below in the instant case, holding that the right of action did not survive as against the executors of Pratt, evidently did not consider himself concluded by the decision of this court in the United Copper Securities Com-

pany Case, for in his opinion he made no allusion to it, although he was one of the judges who sat in the case in this court and concurred therein, writing a separate opinion." [10]  6 F.2d at page 1008.

Although the United Copper opinion left the question of the defendant's benefit for determination by proof at the trial, it did not abandon the rule of benefit. The statement in the Sullivan case that the "court [i. e., in the Copper case] plainly did not determine what 'benefit at the expense of the sufferer' would have to be shown to enable the plaintiff to recover" certainly cannot be construed as any abandonment by Sullivan of the benefit rule itself. If so intended, it was achieved by a most oblique and doubtful operation.

The United Copper Securities case permitted survival of a claim under the federal anti-monopoly laws where the plaintiff alleged that definite property had been wrongfully destroyed or injured and the defendant-decedent had secured some benefit at the expense of the plaintiff-sufferer. Instead of abandoning this basic approach, the court of appeals in Sullivan in effect further applied the same theory of benefit to those cases in which the decedent's estate was wrongfully enriched by *profits* derived by the defendant from an illegal monopolistic venture against the *business* of the plaintiff. The Sullivan court thus expanded the saving concept of survivability to those violations of the antitrust laws resulting in losses of business profits at the hands of a deceased defendant-tort-feasor.

Judge Rogers maintained that while the complaint in Sullivan alleged no damage to "property" as such in the common-law sense so that under the law, as the court then found it, the action would be deemed not to survive, the acts alleged

did however affect the plaintiff's "business" and hence the cause of action should be accorded the same treatment as that afforded damages to "property" under the prevailing rule. Acknowledging a distinction between "business" and "property," the appeals court asserted that the Sherman Act sought to protect not only property but also "business" and to regulate the manner in which "business" could be carried out on an interstate level:

"We are of opinion that under the Sherman Act, giving a cause of action to one injured in his business by acts done in violation of the statute, that cause of action survives, although a cause of action for similar acts alleged to have worked injury to one's 'property' would not survive under the allegations in the complaint herein involved; the reason for the distinction being that the acts complained of do not directly affect the plaintiff's 'property,' but relate to the gains which the plaintiff expected to realize. Those acts relate simply to a loss of trade or profit. They did not diminish the plaintiff's 'property,' which was something already acquired. That which it hoped to acquire, but had not yet obtained, certainly did not constitute its 'property' within the meaning of the statute, and so did not survive. But acts which deprive one of his trade and diminish his profits certainly directly affect his business and may destroy it, and we think that under such a statute as the Sherman Act the cause of action given for injuries to one's business survives." 6 F.2d at page 1012.

The "benefit theory" in the doctrine of survival thus evolved from its more restrictive common-law connotation of the

10. The court's opinion is in error as to this latter point, viz., the failure of Judge Hand to allude to the United Copper Securities case in his opinion denying the motion for substitution. On the contrary, this case was in fact cited by Judge Hand as being consistent with the then existing law on the subject and in support of his decision to deny the motion. See page 407.

existence of "definite property" in the hands of a deceased tort-feasor or his estate to a more comprehensive significance in Sullivan, namely, inclusion within the ambit of the doctrine of those cases involving loss of profits or damages to "business."

Since the decisions in United Copper Securities and Sullivan, a growing trend in this country has fostered a more liberal approach to the problem of survival of actions involving deceased defendants-tort-feasors. This attitude is clearly discernible in the Barnes case, supra, and to an extent in the Rogers case, supra. Reflecting however an even greater liberality in this area is the decision of the First Circuit in Kirk v. Commissioner of Internal Revenue, 1 Cir., 1950, 179 F.2d 619, where the Court of Appeals dispensed altogether with the doctrine of enrichment as a criterion in determining whether a cause of action survived the demise of the defendant. Although Kirk, a tax case, involved the collection of a tax fraud penalty on an income deficiency allegedly owed by a deceased taxpayer, Circuit Judge Woodbury, speaking for a unanimous bench, expressed the views of the court regarding survival of actions in pronounced terms of general application:

"* * * [W]e are satisfied that the modern rule as to the survival of tort actions against decedents' estates is that although actions to recover penalties do not survive, actions to recover compensation for monetary losses or injuries inflicted by a decedent do, without regard to any enrichment of the decedent's estate.

"In the first place this rule commends itself to us as eminently reasonable for while there is certainly no point in mulcting an estate, and thus punishing heirs, for the personal wrongdoing of their ancestor, on the other hand, there seems to us no valid reason why a person who has been injured in his pocketbook by another should be prevented from recovering any recompense or compensation because the person who inflicted the injury died before judgment was obtained against him and his estate did not benefit by the injury. In the second place we feel at liberty to abandon enrichment of a decedent's estate as any criterion of survivability in cases like this because it is evident from the cases cited last above, and those cited therein, that the enrichment concept of the early law of survival was the product of archaic legal preconceptions identifying the representative personally with the estate in his charge which have little or no place in the law today, and the law of survival is not static but dynamic, capable of growth and development to meet present-day needs in conformity with modern concepts. Van Beeck v. Sabine Towing Co., 300 U.S. 342, 57 S.Ct. 452, 81 L.Ed. 685; Barnes Coal Corp. v. Retail Coal Merchants Ass'n, 4 Cir., 128 F.2d 645. In short, we think the general rule today with respect to the survival of tort actions against decedents' estates is that actions essentially for penalties do not survive for the reason that a decedent is beyond punishment, but that actions to recompense or compensate a plaintiff for a harm inflicted upon him by a decedent do survive, for an estate can, and we think should, compensate for injury to the same extent as the decedent had he lived.

"It is to be carefully observed that we are not here concerned with any question of the survival, under general legal principles, of liability for damages awarded primarily as balm for injured feelings in causes of action for libel, slander, malicious prosecution, alienation of affections and the like. Our sole concern is with the survival of liability for damages awarded to reimburse for

expense and loss, and our conclusion is that under modern principles of law liability for damages of this sort survives the death of the person liable regardless of whether or not his estate has been enriched." 179 F.2d at pages 621–622.

In Cox v. Roth, 1955, 348 U.S. 207, 75 S.Ct. 242, 99 L.Ed. 260, discussed earlier, the Supreme Court acknowledged and expressly affirmed the present-day attitude regarding deceased defendants exemplified by the Kirk case. As Mr. Justice Clark observed:

" * * * [W]e do note that advancing civilization and social progress have brought 43 of our States to include in their general law the principle of the survival of causes of action against deceased tortfeasors, and that such recovery, rather than being exceptional, has now become the rule in almost every common-law jurisdiction." [11] 348 U.S. at page 210, 75 S.Ct. at page 244.

The last definitive pronouncement by the court of appeals of this circuit regarding survival of actions under the federal antitrust laws dates back, as has been seen, to the Sullivan decision of 1925, a time when the law governing

survival of actions was still in a somewhat unsettled state. The more cautious and qualified language in Sullivan, drawing its fine (and what may presently be regarded as a dubious) distinction between "business" and "property" interests, has given way to more general and unqualified propositions regarding survival in Barnes Coal Merchants Corp. v. Retail Coal Merchants Ass'n, 4 Cir., 1942, 128 F.2d 645, and Douglas Tobacco Board of Trade, 5 Cir., 1957, 244 F.2d 471, which have apparently disregarded the "benefit (or enrichment) theory" outlined in United Copper Securities and Sullivan.

It may be argued that since the court of appeals of this circuit has yet to decide an antitrust case involving a deceased defendant in which no allegation of personal benefit, direct or otherwise, to the decedent or his estate was present in the complaint, no binding precedent presently exists in this circuit on this precise issue.

Be that as it may, this court finds itself influenced by other pertinent considerations. The Sullivan decision, when viewed in the context of its time, represented an important liberalizing judicial effort to extricate the law regarding sur-

11. As for the law of New York, see Section 118 of the Decedent Estate Law, McKinney's Consol.Laws, c. 13: "No cause of action for injury to person or property shall be lost because of the death of the person liable for the injury." See also Commercial Solvents Corp. v. Jasspon, D.C.S.D.N.Y.1950, 10 F.R.D. 356; D.C., 92 F.Supp. 20.

The language of the Supreme Court in Cox v. Roth, 1955, 348 U.S. 207, 75 S.Ct. 242, is in marked contrast to its earlier pronouncements in United States v. Daniel, 1848, 6 How. 11, 47 U.S. 11, 12 L.Ed. 323, and Patton v. Brady, 1902, 184 U.S. 608, 22 S.Ct. 493, 46 L.Ed. 713, both of which adhered to the then orthodox common-law requirement for survival of actions, wrongful enrichment by a deceased tort-feasor derived at the expense of injury to or destruction of the sufferer's property. Both cases were cited by Judge Hand in the district

court's opinion in the Sullivan case. See page 407.

In Patton v. Brady, 1902, 184 U.S. 608, 614, 22 S.Ct. 493, 495, Mr. Justice Brewer observed: "If we turn to the common law, there the rule was that if a party increased his own estate by wrongfully taking another's property an action against him would survive his death, and might be revived against his personal representative." Earlier, in United States v. Daniel, 1848, 6 How. 11, 13, 47 U.S. 11, 12 L.Ed. 323, Mr. Justice McLean had similarly applied the then prevailing common-law principle that "if the person charged has secured no benefit to himself at the expense of the sufferer, the cause of action is said not to survive; but where, by means of the offence, property is acquired which benefits the testator, there an action for the value of the property shall survive against the executor."

vival from what was then an unduly restrictive and possibly outmoded application of common-law principles to a progressive jurisprudence. Nevertheless, despite this initial boldness, whether the Sullivan case still represents the prevailing law in this circuit may be open to doubt in view of the discernible modern trend. This may be an appropriate time for a more current definitive clarification of the present position of this circuit on the matter, a completion of the task first undertaken in Sullivan, the adaptation of legal principles to the exigencies of a dynamic and progressing society.

 In view of the foregoing reasons, and after due and careful consideration of all the facts and circumstances, I find I am ultimately constrained to follow the rationale of the Kirk decision, supra, 179 F.2d 619, 621–622, and the sentiments expressed in the strong dictum of the Supreme Court in Cox v. Roth, supra, 348 U.S. 207, 210, 75 S.Ct. 242, 99 L.Ed. 260, and hold that an allegation of personal enrichment or benefit to the deceased defendant John A. Warner is not necessary to allow a substitution of his·personal representatives as defendants in his stead. This conclusion, I believe, is also more consonant with the spirit of the Sullivan decision and the remedial character of the relief sought herein. See Sullivan v. Associated Billposters, etc., 2 Cir., 6 F.2d at page 1009, 42 A.L.R. 503; see also Bertha Building Corp. v. National Theatres Corp., 2 Cir., 1959, 269 F.2d 785, 788–789, certiorari denied 1960, 361 U.S. 960, 80 S.Ct. 585, 4 L.Ed. 2d 542.

The plaintiff's motion for substitution is accordingly granted.

This determination, however, is not intended to pass upon any other question as to the applicable rule of damages which will govern in the event that the liability of Werner's estate is affirmatively determined. See Sullivan v. Associated Billposters, etc., supra, 6 F.2d at page 1012; see also Rogers v. Douglas Tobacco Board of Trade, supra, 244 F.2d at page 483.

Since my decision is not wholly free from doubt, and to facilitate any appellate review, if so desired, the court will approve a provision in the order to be submitted herein providing for a certificate for an interlocutory appeal pursuant to Section 1292(b) of Title 28 U.S.C.A.

Settle order on notice.